Frank LaROCCA, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17458.

United States Court of Appeals
Eighth Circuit.

Oct. 12, 1964.

Kenneth K. Simon and Lewis E. Pierce, Kansas City, Mo., for appellant.

Clifford M. Spottsville, Asst. U. S. Atty., Kansas City, Mo., and F. Russell Millin, U. S. Atty., Kansas City, Mo., for appellee.

Before VAN OOSTERHOUT, BLACK-MUN and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

Defendant, Frank LaRocca, has appealed a jury conviction finding him guilty of a one-count indictment which charged that he testified falsely before a federal grand jury investigating the shooting of government witness Kenneth Bruce Sheetz in Kansas City, Missouri on June 20, 1960.[1]

The grand jury had been convened to determine the ownership of a .38 caliber Smith & Wesson revolver, serial number 114318, found at the scene of the crime and investigate the relationship, if any, of this weapon and the assault on the government witness under subpoena to testify in the case of United States v. Anthony Biase, a criminal proceeding then pending in the United States District Court at Omaha, Nebraska.

The evidence adduced at defendant's perjury trial established that he is a 73 year old Italian immigrant, who is retired from the grocery business and presently living in Kansas City, Missouri. On August 12, 1957 while visiting long-time friends, Frank and Lena Costanzo, in Gunnison, Colorado, defendant purchased a .38 caliber Smith & Wesson revolver identical to, but bearing a different serial number than, the weapon under grand jury investigation. The purchase was made at Elmer's Sporting Goods Store from the proprietor, William G. Elmer, who testified that Frank Costanzo, the landlord of his building, introduced defendant as "John Sutonano", which he duly recorded in his federal firearms record as the name as the vendee.

According to Elmer, Frank Costanzo and the defendant returned to his store on October 11 and the defendant, still using the alias John Sutonano, inquired about purchasing twelve more .38 caliber Smith & Wesson revolvers for Christmas presents. Elmer informed defendant that he did not have any more revolvers of that kind on hand, but would have to obtain the guns from his wholesale jobber in Denver, agreeing to telephone defendant at Costanzo's house when the shipment arrived.

[1]. Section 1621, 18 U.S.C.A. defines the crime of perjury as follows:

"Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, *. * *."

The order was subsequently placed with the jobber, Whitney Sporting Goods Company, which in turn did not have this item in stock, and according to its president had to special order the revolvers from the Smith & Wesson factory in Massachusetts. When the Whitney Company received the shipment on October 23, its president testified that the revolvers, one of which bore the same serial number as the weapon under investigation, were reshipped to Elmer's Sporting Goods in Gunnison that same day.

Elmer received the shipment of revolvers on October 28. He immediately telephoned the Costanzo house, advised Lena Costanzo that "the package had arrived", and inquired as to the whereabouts of "John". It was Elmer's testimony that Lena Costanzo told him that the defendant was not there, but she would call Elmer back when he arrived. Elmer stated that a day or two after the guns arrived, on or about October 29th, 30th or 31st, he received a telephone call from Lena Costanzo informing him that the defendant was at her house and to deliver the guns after closing his store that evening.[2] Elmer delivered the twelve revolvers in their original shipping carton to Costanzo house about 6:00 p. m. When he arrived, only defendant and Lena Costanzo were present. Elmer placed the carton of revolvers on a kitchen table. Defendant removed from the carton one of the individually packaged revolvers, opening it for an inspection of the merchandise. After discussion of the price with Elmer, defendant paid him the agreed $676.00 in cash, whereupon Elmer departed.

Pertaining to this sale, Norman Brown, Elmer's son-in-law and employee, testified that he posted the entry in the firearms record which indicates that twelve .38 caliber Smith & Wesson revolvers ordered from the Denver jobber were received on October 28. Elmer stated that he made the subsequent entry that these revolvers were sold to one John Sutonano of Kansas City, and both Elmer and Brown agreed that Brown entered the date of this sale as October 30. Elmer testified that throughout the dealings, defendant never used the name, "Frank LaRocca". Elmer first identified defendant as the man who purchased the revolvers by selecting his picture from photographs of several persons shown him by federal agents. While testifying at defendant's trial, Elmer positively identified defendant in person as the man to whom he sold the revolvers.

Frank Costanzo, 79 years old and of poor memory, admitted that he was present when defendant purchased a revolver from Elmer on August 27 but denied defendant used the alias "John Sutonano" and disclaimed any knowledge concerning defendant's alleged purchase of twelve more revolvers during any subsequent visit. Lena Costanzo denied she had any telephone conversations with Elmer, recalled being present when Elmer delivered a box to Frank LaRocca at her house, but denied hearing any of the conversation between the two men or having any knowledge of the contents of the box.

Dr. Joseph Yasso, a Kansas City osteopath and only defense witness, testified that he examined and treated defendant in 1958 for hardening of the arteries, a lung condition, and other maladies associated with old age.

When summoned before the grand jury to testify concerning his knowledge about the revolver found at the scene of the shooting identified by Elmer as one of the twelve guns sold Frank LaRocca, alias "John Sutonano", defendant, upon interrogation by two government attorneys, gave the following testimony which the jury below found was perjurious:

"Q. Did you ever purchase a gun from William Elmer?

"A. No, sir."

 * * * * * *

"Q. Did you ever purchase a gun in Gunnison, Colorado?

2. The government and defense attorneys stipulated that the defendant arrived in Gunnison, Colorado at 4:56 p. m. October 31, 1957 via commercial airlines from Denver, Colorado.

"A. No, sir."

\* \* \* \* \* \*

"Q. While you were at Costanzo's home as a guest, did anyone deliver a box to you?

"A. Not that I know of.

"Q. Did anyone deliver a box of guns to you?

"A. No, sir.

"Q. While you were at that home?

"A. No, sir."

\* \* \* \* \* \*

"Q. I'd just like to repeat a couple of the questions I asked before. Did you ever receive a gun from anyone in Colorado?

"A. Never."

\* \* \* \* \* \*

"Q. Did anyone from a sporting goods store ever deliver anything to you at the home of Lena Costanzo and Frank Costanzo?

"A. I repeat the same, no."

Defendant urges reversal of his conviction on grounds that (1) his alleged false statements were unrelated to a material matter under investigation by the grand jury; (2) the indictment of the grand jury was invalid because its investigation was directed at defendant without informing him of this fact; (3) the District Court erred in refusing to instruct the jury the government must prove perjury by substantial evidence excluding every hypothesis other than that of guilt; (4) the evidence of perjury was insufficiently corroborated; (5) the District Court erred in admitting evidence prejudicial to defendant concerning the assault of the government witness; and (6) also erred in its failure to require the government to produce all the statements of its witnesses in conformity with the Jencks Act, 18 U.S.C.A. § 3500.

Defendant first mounts an attack upon the indictment relying on our decision in Brown v. United States, 245 F.2d 549 (8th Cir. 1957). In that case we held that because the evidence indicated the defendant was brought before the grand jury with the view of getting him to commit perjury and without any purpose of indicting anyone for a previous offense committed at least in part within the grand jury's jurisdiction, the grand jury exceeded its powers. The evidence there, however, was strong to the effect that the defendant, a government investigator, had been sent on an undisclosed assignment to Omaha, Nebraska, for the ulterior purpose of getting him to perjure himself before a grand jury improperly convened there to investigate defendant's implication in a possible conspiracy to "whitewash" a government inquiry of corruption within the collector's office of the Internal Revenue Service in St. Louis, Missouri.

In the instant case, the grand jury investigation was conducted in Kansas City, Missouri, the locus of the assault on the government witness. Its purpose was to trace the suspected role the revolver found near the scene of the shooting played in the crime. Credible evidence before that body indicated the defendant was the last known purchaser, possessor and, hence, owner of the weapon. Therefore, it was only logical that he was subpoenaed to testify concerning his alleged ownership and any knowledge of its disposition which might shed light on the weapon's connection with the crime. At the outset the defendant was apprized by the government attorneys who questioned him of his rights under the Fifth Amendment. He voluntarily testified denying categorically that he had ever purchased a gun or guns from anyone in Gunnison, Colorado and especially from sporting goods proprietor Elmer or had ever received a box of guns delivered by Elmer to him at the Costanzo house.

■■ The government had no ax to grind in its interrogation of defendant, except insofar as his testimony supplied information leading towards the potential issuance of a true bill indicting those persons responsible for obstructing justice by assaulting a government witness. The record therefore belies the claim the government's motive for subpoenaing defendant was not in furtherance of a

legitimate investigatory function of the grand jury but designed solely to entrap defendant in a charge of perjury. Thus, to this extent the rationalé in Brown is readily distinguishable. See Masinia v. United States, 296 F.2d 871 (8th Cir. 1961). Moreover, the grand jury is imbued with broad inquisitorial powers and is not obliged to furnish witnesses testifying before it a program defining the crime to be investigated or the persons against whom an accusation is sought. Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 63 L.Ed. 979 (1919); Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906); United States v. Neff, 212 F.2d 297 (3rd Cir. 1954).

■ Defendant further contends that the grand jury's investigation of an offense occurring in Missouri was immaterial and unrelated to defendant's testimony regarding certain events which occurred outside of its jurisdiction in Colorado and, therefore, even if his testimony was false, it was not definable as perjurious in this instance. We are unimpressed with this argument. There is no question that when the grand jury is investigating a possible federal offense within its jurisdiction, it is authorized to receive evidence as to any acts related to the offense even though they occurred outside of its jurisdiction. Masinia v. United States, supra.

■■ The governing criterion that is recognized by this Circuit concerning the relevancy or materiality of the alleged false testimony to the purpose of the grand jury's investigation is whether or not the perjurious statements impede and hamper the course of the investigation "in the sense that it has a tendency to affect the ultimate action of the grand jury". Dolan v. United States, 218 F. 2d 454 (8th Cir. 1955), cert. denied 349 U.S. 923, 75 S.Ct. 665, 99 L.Ed. 1255 (1955); Claiborne v. United States, 77 F.2d 682 (8th Cir. 1935); see also United States v. Parker, 244 F.2d 943 (7th Cir. 1957), cert. denied 355 U.S. 836, 78 S.Ct. 61, 2 L.Ed.2d 48 (1957). Clearly, the impact of defendant's false testimony would be to thwart the grand jury in its efforts to determine a link between the ownership and possession of this weapon and the crime. Upon reaching this impasse, the grand jury was definitely dissuaded from bringing an indictment against anyone based only on the weapon's mysterious discovery. The District Court quite correctly ruled as a matter of law that defendant's alleged perjured testimony was material to the subject matter of the grand jury investigation.

■ Contrary to another of defendant's contentions, the inclusion of evidence of the facts surrounding the shooting of the government witness did not create prejudicial error. This evidence was admitted for the limited purpose of establishing the materiality between the grand jury's investigation and defendant's false statements which was essential to the government's proof that a valid indictment for perjury had been returned. Masinia v. United States, supra, 296 F.2d at 881.

■■ In a prosecution for perjury the government must prove the defendant knowingly and willfully made a false statement upon a material matter in a case in which the law of the United States authorizes an oath to be administered before a competent tribunal. 18 U.S.C.A. § 1621, footnote 1, supra. The degree of proof required of the government to establish these elements has been defined as "substantial evidence excluding every other hypothesis than that of guilt". See Blumenfield v. United States, 306 F.2d 892, 897 (8th Cir. 1962) and cases therein cited. Stated differently, but to the same effect, "to sustain a conviction, it must be shown by clear, convincing and direct evidence to a moral certainty and beyond a reasonable doubt that the defendant committed wilful and corrupt perjury". Smith v. United States, 169 F.2d 118, 121 (6th Cir. 1948); Beckanstin v. United States, 232 F.2d 1 (5th Cir. 1956).

■ Defendant contends that the District Court's instruction requiring only that the prosecution prove defendant's guilt beyond the customary "reasonable doubt" to prevail fell below the higher

standard of proof demanded in a perjury case. The effect of which, the defendant argues, permitted the jury to misuse much of the evidence which supported the more logical hypothesis that defendant testified truthfully before the grand jury or even if some of his statements were false, they were made mistakenly and without corrupt motive due to his failing memory.

We do not believe the jury was led astray by the court's inelaborate charge on burden of proof. Any definitive omission, we think, was corrected by its detailed instruction forbidding a conviction unless the jury found independent evidence corroborating the testimony of the government's chief witness Elmer who furnished the direct proof that defendant testified falsely before the grand jury when he stated he had never purchased from Elmer any guns which the latter delivered to him at the Costanzo house in Gunnison, Colorado. Furthermore, the court carefully spelled out the alternatives the jury could consider in evaluating the witnesses' testimony based on their credibility. The jury was correctly instructed it could credit a portion or reject all of the testimony of a witness it believed had not testified truthfully to a material matter. While it is arguable that most of the testimony of witnesses Frank and Lena Costanzo is consistent with defendant's innocence, this Court cannot invade the jury's province to assign whatever weight, if any, to such testimony.

Therefore, a review of all the court's instructions in their combined context does not convince us that the court committed reversible error in charging the jury as to the government's burden of proof in a prosecution for perjury. Cf. Newman v. United States, 331 F.2d 968, 971 (8th Cir. 1964).

 Defendant also challenges the existence in the record of any independent evidence corroborating witness Elmer's oath as required to sustain a conviction in a perjury case. [For the rule see Weiler v. United States, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495 (1945).] The immediate answer to this barren defense may be found in the aggregate of corrobative evidence consisting of Elmer's business records, i. e., his federal firearms record book confirming the transactions with defendant to which he testified; a stipulation admitting defendant's arrival in Gunnison during this same time period; testimony of Elmer's wholesale distributor and his son-in-law identifying and tracing the transfer of the weapon subsequently found at the scene of the crime; and finally, portions of Frank and Lena Costanzo's testimony conflicting with defendant's disclaimer of purchase of any revolvers in Gunnison, Colorado as stated before the grand jury.

Following direct examination of the government's witnesses, counsel for defendant requested production by the government of all their prior written statements pursuant to the Jencks Rule, 18 U.S.C.A. § 3500. Defendant claims his rights were prejudiced by the government's failure to turn over with the sworn typewritten affidavits given by Elmer to the federal agents who interviewed him, certain handwritten statements transcribed by them from which the typed statements were prepared. The government denied possession in its files of any handwritten statements of the witness in addition to the four typewritten affidavits produced.

The District Judge made a thorough inquiry of the matter during trial. Elmer testified that on every occasion when he was interviewed, the agents would prepare a hand-written statement by recording the substance of his answers to their questions returning later with a typewritten facsimile which he read and approved before swearing to its veracity. Thereupon, the court ruled that the statements produced contained all the information elicited from the witness by the agents and the government had fully complied with the Jencks Rule.

This defense was raised again in defendant's post trial motion for acquittal or a new trial. The trial court conducted an *in camera* inspection of all the government's interview reports concerning

the questioning of witness Elmer. The court concluded in its memorandum order denying defendant's motion that all statements "adopted or approved" by the witness within the purview of the Jencks Rule had been produced at trial by the government and delivered to defendant for use in cross-examination.

 We are satisfied that the District Court settled for nothing less than strict compliance by the government with the dictates of the Jencks Rule, and, in any event, was correct in concluding that any inadvertent error arising from the government's inability to produce the original handwritten statements was harmless. Citing Rosenberg v. United States, 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959). See also Hayes v. United States, 329 F.2d 209, 219–220 (8th Cir. 1964).

For the reasons hereinbefore stated, the conviction of defendant is affirmed.