UNITED STATES of America,
Plaintiff,

v.

Donald E. LASATER, Defendant.

No. 75 CR 80–W–1.

United States District Court,
W. D. Missouri, W. D.

Nov. 12, 1975.

Bert C. Hurn, U. S. Atty., Paul Anthony White, Anthony P. Nugent, Jr., Asst. U. S. Attys., Kansas City, Mo., for plaintiff.

F. Russell Millin, Kansas City, Mo., Norman S. London, London & Greenberg, St. Louis, Mo., for defendant.

MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

On February 27, 1975 the grand jury returned an indictment charging defendant Donald E. Lasater with four counts of making false material declarations in violation of Section 1623, Title 18, United States Code. Several pretrial motions were filed by defendant, and at a conference with the Court on July 22, 1975, all counsel agreed to submit the is-

sue of the materiality of the alleged false declarations to the Court. Thereafter, a full evidentiary hearing was held, and the parties have filed their requested findings of fact and conclusions of law in accordance with the schedule approved by the Court at the close of the hearing. In Part I of this opinion, we will consider the government's recently filed motion to withdraw its consent to the submission of the materiality issue to the Court. In Part II we will enter our findings of fact on the issue of materiality, most of which are undisputed. Part III will contain our conclusions of law on this essential element of a Section 1623 offense.

## I.

Because the government's requested findings of fact and conclusions of law reflected an apparent disenchantment with the procedures agreed to by the parties in this case, we directed further proceedings in our memorandum filed October 8, 1975. Pursuant to directions made in the orders entered October 8, 1975, the government, on October 14, 1975, filed a formal motion to permit it to withdraw its consent to submit the issue of materiality to the Court. We have considered the suggestions in support and in opposition of that motion and conclude that the government's recently filed motion should be denied.

 The government concedes that both the Supreme Court and the Court of Appeals for the Eighth Circuit have commandingly concluded that the question of materiality in a perjury prosecution is a question for the Court, and not for the jury. See, e. g., *Sinclair v. United States*, 279 U.S. 263, 298, 49 S.Ct. 268, 73 L.Ed. 692 (1929); *United States v. Koonce*, 485 F.2d 374, 380 (8th Cir. 1973). The government suggests, however, that "at least in this case," the rule applicable to all other perjury cases should not be followed and that the question of materiality should be submitted to a jury rather than the Court

as a matter of law. The only reason stated to support the government's unique invitation that this Court refuse to follow and apply the law as declared by the Supreme Court and its controlling Court of Appeals is that, so far as this case is concerned, the government "favors decisions on factual issues by a jury, as opposed to one judge whenever that is possible."

The government's motion must be denied because neither the consent of the government nor the consent of the defendant is relevant to the determination of whether the question of materiality is to be determined by the Court or by a jury. The parties may, as certainly they did in this case, consent to procedures under which the question of materiality may be determined by the Court in a convenient and expeditious manner. The fact, however, that the parties consented to a particular procedure does not mean that the consent of either party may properly be considered as a relevant factor in regard to whether this Court is required to follow and apply the controlling principles of law established by our controlling appellate courts. Under the circumstances it is apparent that the government's motion should be denied and that this Court should proceed to determine the question of materiality as a matter of law.

It is appropriate to add a few words in regard to the posture of this case under the procedures which the parties agreed to submit the question of materiality in advance of all other questions presented by defendant's motion to dismiss the indictment. At the time the parties agreed to submit the question of materiality to the Court, defendant's motion to dismiss the indictment was pending before the Court. Examination of that motion and examination of defendant's supplemental motion to dismiss which added new grounds revealed during the hearing, establishes that serious and substantial questions were presented by defendant's motion to dismiss.

It is clear that the parties intended by their agreement on procedure that the Court should defer any ruling on the defendant's motion to dismiss until after it had considered and decided the materiality question. Defendant has suggested that our conclusions of law expressly recite that it is not necessary for the Court to reach and rule the questions presented by the defendant's motion to dismiss but that the Court should nevertheless indicate its view in regard to several of the questions preserved by that motion.[1]

The government's response to the defendant's suggested conclusion of law does not specifically object to defendant's suggested conclusion. The government merely stated that it had "no comment" in regard to that suggestion. The government's "no comment" response, however, cannot properly be considered as an objection or even as a disagreement, with defendant's basic suggestion that it is not necessary that this Court rule defendant's motion to dismiss. For it is clear that the suggested findings of fact and suggested conclu-

sions of law filed by both sides were, except for the one suggested conclusion of law quoted in footnote 1 above, directed solely to the materiality issue presented under the agreed procedures.[2]

Under the circumstances stated, we do not deem it appropriate to indicate that our ruling might have been in regard to the various grounds upon which defendant's motion to dismiss is based. As we have stated, the grounds upon which defendant's motion is based present serious and substantial questions. But the seriousness and substantiality of those questions, particularly after the full factual circumstances were incidentally developed at the hearing, were clearly apparent to the government. It is quite apparent that the government was willing to run whatever risk may have been involved in regard to defendant's motion to dismiss in order to have the controlling question of materiality decided once and for all under the procedures agreed to by the parties. Had the government wanted to have mooted the materiality question, it would not have attempted to withdraw from its procedural agree-

---

1. Specifically, the defendant suggests that we state the following conclusion of law:

 The foregoing disposition makes it unnecessary for the Court to rule on defendant's motion to dismiss the indictment, however, the Court has grave reservations as to whether the grand jury did in fact abdicate its responsibility to indict defendant only upon probable cause to believe that he had committed the offenses charged. In this connection, the Court views with particular concern (1) the lack of any evidence that the alleged statements of defendant were, in fact, false; (2) the admission of the Assistant United States Attorney that no instructions or directions were given to the grand jury concerning the elements of a Title 18, Section 1623 offense; (3) the admission of the Assistant United States Attorney that among his considerations for seeking the indictment of defendant was the belief that defendant might then come forward with information regarding the alleged tax liability of Warren Hearnes. [T. 179–180]

 While under the dictates of *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406,

100 L.Ed. 397 (1956), this Court is restricted in any inquiry regarding the competency or sufficiency of the evidence presented to the grand jury, the above noted factors could well be relevant considerations in determining whether defendant was indeed afforded his rights under the Constitution to be prosecuted only upon an indictment by a grand jury based upon probable cause. *Ex Parte Bain*, 121 U.S. 1, 78 S.Ct. 781, 30 L.Ed. 849 (1887); *Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); and *Costello v. United States*, *supra*.

2. The government agreed that the following suggestion of the defendant accurately stated the parties' procedural agreement:

 Pursuant to Rule 12(b)(4) F.R.Cr.P., by agreement of the parties, and in an effort to comply with the intent expressed in Rule 2 F.R.Cr.P., this Court properly ordered a bifurcated trial wherein the issue of materiality could be tried before the Court, and if necessary, the issue of falsity could then be later presented to a jury.

ment; it would have simply confessed defendant's motion to dismiss. Because the government did not elect to follow that procedural course, we shall reject defendant's suggested conclusion of law in regard to the motion to dismiss and will proceed to decide the merits of the materiality issue in accordance with the procedures agreed to by the parties and approved by the Court.

II.

Consistent with procedures agreed to by the parties and approved by the Court at the close of the hearing,[3] the government agrees that the Preliminary Statement included as a preface to defendant's suggested findings of fact and suggested conclusions appeared in all respects to be accurate. We therefore adopt the following as a part of our findings of fact:

### PRELIMINARY STATEMENT

This cause is before this Court on an indictment alleging in four counts that defendant violated Title 18, United States Code, Section 1623, by making certain allegedly false and material statements before a Federal Grand Jury on or about February 5, 1975.

The defendant has moved to dismiss the indictment on various grounds including an alleged total lack of evidence of the offenses before the Grand Jury and an abdication of the Grand Jury's duties and responsibilities, which defendant contends deprived him of his constitutional right to be prosecuted only upon an indictment by a Grand Jury.

Additionally, the Court, by agreement of the parties, ordered that the issue of the materiality of the defendant's statements, being an issue for determination by the Court alone, be tried separately and prior to the issue of whether the statements were, in fact, false. Accordingly, on August 18, 1975, a hearing and bifurcated trial was conducted pursuant to Rule 12(b)(4), F.R.Cr.P., and in accordance with the policy of simplicity expressed in Rule 2, F.R.Cr.P. At the aforesaid hearing, the Court had before it both the issue of materiality and the defendant's motion based upon alleged total lack of evidence before the Grand Jury.

At the request of the Government, and by the consent of the defendant, who specifically waived his right to a public trial, the foregoing proceedings were held *in camera*.

The *in camera* record presently before the Court consists of the testimony elicited at the aforesaid proceeding and exhibits received in evidence, a stipulation of testimony in the form of a "chronology of significant events" leading to the indictment and the following Grand Jury Transcripts and Exhibits, which the Government has represented constitute all matters relating to the indictment which were presented to the Grand Jury prior to the indictment. [The names of fifteen witnesses who appeared

---

3. After the close of the hearing the Court approved the agreement of the parties that there would be a simultaneous submission of suggested findings of fact and suggested conclusions of law, on an approved time schedule. Page 229 of the transcript of the hearing shows that the parties agreed that:
The form of the suggested findings of fact and suggested conclusions of law shall be that each suggested finding of fact shall be stated in a separately numbered sentence in which the suggested finding is stated. Such sentence shall be supported by a reference to an exhibit in evidence or to the transcript of the testimony which has been taken. Those references need not be elaborated. They may be placed simply in parentheses so that if there is a dispute about a fact the Court will have before it the citations to the exhibits and record which both parties contend establishes a particular fact. . . . The answer suggestions shall respond directly . . . to the suggested findings made by opposing counsel. If you agree that the record establishes such a fact, so state. If you agree that the fact is sustained by the record but it is immaterial or irrelevant, so state, and you can add why you believe it and state a case if you care to do so.

before the Grand Jury and the dates of their appearances were then stated. The only other grand jury transcript listed was the proceeding on February 27, 1975, when First Assistant United States Attorney Moody presented the indictment to the Grand Jury.] [Defendant's Suggested Findings of Fact and Conclusions of Law, p. 1]

The government did not submit its suggested findings of fact in the form agreed to and directed by the Court at the close of the hearing. Rather, the government filed a four page narrative statement in which none of the sentences were numbered. The following findings of fact, however, are stated in the precise language contained in the government's narrative statement:

1. In January, 1973 the Internal Revenue Service began an audit of the civil tax liability of Warren E. Hearnes.

2. In January, 1975, the federal grand jury began an investigation of the income tax returns of Warren E. Hearnes for the years 1968 through 1973.

3. The IRS audit and the criminal investigation of IRS agents had revealed that in 1968 and 1969 certain deposits were made by J. V. Conran in the account of the "Bootheel Committee for Hearnes" in the Farmers Bank of Portageville, Missouri, totaling $63,900.60.

4. On January 10, 1975 the grand jury investigation revealed that the sources of the deposits [made by J. V. Conran] were the Mercantile Trust Company, J. A. Glynn & Company and Howard Cook of the Central Missouri Trust Company of Jefferson City, Missouri.

5. The grand jury later learned that those three payments to Conran were made in connection with an agreement with Conran by the terms of which Conran was guaranteed a profit on certain bond transactions.

6. The guarantors appeared to be Kenton R. Cravens, Donald E. Lasater, and Mercantile Trust Company, of which Cravens and Lasater were the chief executive officers.

Additional undisputed findings of fact may be made by stating particular factual circumstances which defendant included in his suggested findings of fact and which the government, in its responsive filing, has agreed are accurately stated. Accordingly, we find in the precise language which the parties agree is accurate that: [4]

7. The indictment in this case was returned in connection with a grand jury investigation authorized on January 3, 1975 by the Assistant Attorney General, Tax Division, to inquire into "possible criminal tax violations committed by Mr. Hearnes."

8. The authorization letter noted "the imminent expiration of the statute of limitations as to the year 1968" and requested a report prior to March 21, 1975.

9. The grand jury had documents which showed the loan transactions, the purchases and sales of the bonds, the deposits of the proceeds in The Bootheel Committee account and the disbursements from that account.

10. The investigative agents knew from their investigation that the price paid by Mercantile to Conran for the bonds was in excess of the market value of those bonds.[5]

---

4. In some instances in this group of findings, we have used particular language from the government's response to a particular finding suggested by the defendant. Such language was used by the government in explaining why it agreed in part but could not completely agree with a particular finding suggested by the defendant.

5. Findings Nos. 9 and 10 are taken from the government's response in which the government refused to agree to the complete accuracy of defendant's suggested finding which stated in part that:
 At the time of defendant's testimony the grand jury was either aware of, or had the means readily available to become

11. Preparatory to the defendant's testimony, Internal Revenue Agent Edwin Reising, the principal investigating agent, prepared a list of proposed questions to be propounded to defendant, together with the anticipated answers thereto [Exhibit 4]. Exhibit 4, prepared by Mr. Reising, advised [Assistant United States Attorney] White of the facts known to the government at the time.

12. There is no question that prior to Mr. Lasater's testimony on February 5, 1975, the agents and the grand jury had assembled much information which pertained to the bond transactions between Mercantile and J. V. Conran.

13. The agents and the grand jury were aware [prior to Mr. Lasater's testimony] of the loans by The Mercantile Bank and the letter signed by Cravens guarantying the bonds would be repurchased at a profit to Conran.

14. Both the list [of questions] prepared by Reising and the transcript of the testimony of J. A. Glynn before the grand jury on January 22, 1975, together with the business records received in evidence at the time of Glynn's testimony, as well as the testimony and notes of Agent Reising [T. 68, 69] [Exhibit 3], indicate that the government investigators and the grand jury were well aware that the bonds were repurchased by Mercantile through J. A. Glynn Company at a price in excess of market value.

15. Each of the four counts of the indictment allege that "the grand jury was engaged in an investigation to determine whether payments made from the Mercantile Trust Company, N.E., St. Louis, Missouri to one J. V. Conran were taxable income to Warren E.

Hearnes" and that "it was a matter material to the said grand jury inquiry to determine whether the aforesaid payments were taxable income to Warren E. Hearnes in the years 1968 and 1969."

16. The questions and answers alleged in the indictment are not contained among those questions submitted by Agent Reising as pertinent to his investigation, and a review of the entire transcript of defendant's testimony indicates that many questions considered pertinent by Reising were simply not asked by the Assistant United States Attorney. The transcript contains a surprising paucity of questions relating to Warren Hearnes or defendant's knowledge of transactions concerning Warren Hearnes.

17. A review of the entire transcript of defendant's testimony indicates that (a) defendant acknowledged signing the guarantee letter with Kenton Cravens and elaborated extensively on the circumstances and purposes for which it was prepared [Lasater transcript and cross examination of White, T. 189–215]; (b) defendant acknowledged that the business records of J. A. Glynn regarding Mercantile's purchase of the bonds at a price above market were undoubtedly correct [T. 189–215]; and (c) defendant elaborated in great detail on the purposes and outcome of his meeting with J. V. Conran [T. 189–215]. The defendant's testimony, therefore, confirmed the undisputed documentary evidence already in the hands of the grand jury.

18. A review of the entire transcript of defendant's testimony indicates that defendant offered details as to all of the matters referred to in the indictment, either in response to questions or in vol-

aware of, certain transactions concerning Mercantile's loans to Conran and subsequent purchase of bonds resulting in a guaranteed profit to J. V. Conran, which transactions formed the subject matter of the defendant's statements alleged in the indictment.

It is apparent that the government, rather than agreeing completely with the defend-

ant's suggested finding, simply used different language to admit the substance of defendant's suggested finding. We have used the government's language in making our findings so that any possible dispute about the factual circumstances be avoided.

unteering information to clarify the transactions for his interrogators and the grand jury.

19. Count I of the indictment, concerning who actually wrote the letter of guarantee to J. V. Conran, involves the following questions and answers:

Q. Of course, the letter that you have read, Grand Jury Exhibit 19, who wrote that letter?

A. Well, I didn't write the letter but it was written as if I did but I signed the letter.

Q. Do you know who dictated this letter for your signature, of June 5, 1968?

A. I assume Mr. Cravens did. I don't really know. He had the letter prepared for me.

Those questions and answers were alleged to be material to the grand jury inquiry to determine whether or not the payments made from the Mercantile Trust Company to J. V. Conran were taxable income to Warren E. Hearnes in the years 1968 and 1969. It was further alleged in Count I that:

Said testimony was false and contrary to the oath taken by Donald E. Lasater, as Donald E. Lasater then and there well knew and believed, in that he did write the letter and did dictate said letter to his secretary; all in violation of 18 United States Code Section 1623.

20. Count II, concerning the bank's participation in the repurchase of the bonds, involves the following questions and answers:

Q. Did the bank participate in the purchase of those bonds?

A. Not that I am aware of.

Q. If the bank had participated in the repurchase of those bonds, is it likely you would be unaware of it?

A. Yeah, I would think so. I really don't know. I didn't arrange for the purchase of bonds or the sale of bonds.

The allegation concerning materiality in Count II was incorporated by reference from Count I. Count II further alleged that:

Said testimony was false and contrary to the oath taken by Donald E. Lasater, as Donald E. Lasater then and there well knew and believed, in that the Mercantile Trust Company participated in the purchase and repurchase of the bonds, and Donald E. Lasater was aware of same, and himself participated in the purchase and sale of the bonds; all in violation of 18 United States Code, Section 1623.

21. Count III involves the following questions:

Q. Assuming they paid a higher price than the market value at the time for those securities, how would that transaction be reflected on the books and records of your bank?

A. I have no idea. I assume they paid market price for them. I really don't know.

The allegation concerning materiality in Count III was incorporated by reference from Count I. Count III further alleged:

Said testimony was false and contrary to the oath taken by Donald E. Lasater, as Donald E. Lasater then and there well knew and believed, in that he was aware that the Mercantile Trust Company paid substantially in excess of the market price for the securities; all in violation of 18 United States Code, Section 1623.

22. Count IV, concerning defendant's meeting with J. V. Conran in Sikeston, Missouri, involves the following questions:

Q. And what occasioned your meeting?

A. I met him in Sikeston, Missouri, to in a sense explain to him that he had an alternative of paying off a loan or selling the bonds, whichever he chose to do.

The allegation of materiality in Count IV was incorporated by reference from Count I. Count IV further alleged:

Said testimony was false and contrary to the oath taken by Donald E. Lasater, as Donald E. Lasater then and there well knew and believed, in that Donald E. Lasater, in behalf of Mercantile Trust Company, had directed and prearranged the disposition of the bonds and in fact the said Donald E. Lasater made the decision as to their disposition; all in violation of 18 United States Code, Section 1623.

The findings of fact thus far stated are made in the language of the parties in the manner stated above and are not disputed. We shall now discuss additional findings the government has suggested should be made under the circumstances of this case and the reasons why the government's suggested findings cannot properly be made under the circumstances.

In its September 23, 1975 filing, the government suggested that we find as a relevant fact that:

The purpose of calling defendant before the grand jury was to determine, if possible, the answers to the following general questions:

(1) Who was the intended recipient of the "profit" transmitted to Conran on the bond transactions?

(2) What was the consideration for the agreement guaranteeing the "profits" on the bond transaction?

(3) Was there a "deal" between the banks and Warren E. Hearnes, or anyone acting for him, by which the banks retained or earned their designations as state depositories?

(4) Were there any other agreements of this kind and, if so, with whom, when, where, why, how and for how much? [See Tr. 53, 55, 74, 77, and Government's Exhibit No. 4]

The difficulty with the government's position is that the four "general questions" which the government now contends the defendant was called before the grand jury to answer were not in fact asked the defendant by the Assistant United States Attorney in charge of the grand jury investigation. The questions involved in each of the four counts of the indictment are simply different questions than the four "general questions" which the government now contends was its purpose of calling the defendant before the grand jury to answer.

The government's suggested conclusions of law, rather than its suggested findings of fact, make clear the reason why the government attempts to have this Court make a finding of fact concerning the general objectives and the general purpose of the grand jury inquiry. The government has suggested that we conclude as a matter of law that:

Since the grand jury was conducting an inquiry into the income tax liability of Warren Hearnes . . . *any* question asked the defendant on February 5, *the purpose of which was to elicit testimony which would lead to answers to the four general questions as to the intended recipient of the "profits" generated by and the consideration for the bond transactions and any other such agreements, was material to the grand jury's inquiry.* [Emphasis ours]

The government's legal theory that materiality is to be judged by questions which the defendant was not asked, rather than by those he was in fact asked, runs throughout the government's filings. On page 7 of its October 2, 1975 filing in opposition to the defendant's suggested findings, the government states that the "materiality of the questions asked a witness need not be judged by reference only to the questions asked that witness. Materiality must be judged by reference to *all* of the work of the grand jury in the particular investigation in which the witness is called." [Emphasis in original]. And on page 8 of the same filing, the govern-

ment argued that "all the . . . Court must decide is whether or not the question pertained to *the general subject matter of the grand jury's inquiry* and whether the answer could naturally have the effect or tendency to influence, mislead, dissuade or hamper the grand jury's investigation." [Emphasis ours]

There are two fundamental flaws in regard to the government's theory of prosecution: the first factual; and the second legal. In regard to the facts, we find:

23. The answers given by the defendant to the questions involved in each count of the indictment did not in fact tend to influence, mislead or hamper the grand jury in its investigation of whether the payments made by the Mercantile Trust Company to J. V. Conran were taxable income to Warren E. Hearnes in the years 1968 and 1969.

24. Consistent with the undisputed factual findings made in this opinion, we further find that the documentary evidence which had been gathered by the Internal Revenue Service before the defendant was ever called before the grand jury was sufficient in fact to advise the grand jury in regard to the full factual circumstances as to how the payments were in fact made by the Mercantile Trust Company to J. V. Conran.

25. We also find that the questions actually asked the defendant, as those questions appear in the four counts of the indictment, were not calculated to develop precise and specific information which would have assisted the grand jury in determining whether the payments made to J. V. Conran were, in fact, taxable income to Warren E. Hearnes.

26. We reject the conclusory testimony of the Assistant United States Attorney who suggested that the answer given by the defendant in fact misled him, hindered the grand jury inquiry, left counsel no place to go, put him at a dead end, and terminated his inquiry. [Tr. 143, 144, 146, 149, 150]

27. We find that the answers given by the defendant did not in fact impede the Assistant United States Attorney from proceeding with whatever questions he may have wanted to ask about what the government now contends was the general purpose of calling the defendant before the grand jury. [Tr. 205]

28. We find that the failure of the Assistant United States Attorney and the failure of other government counsel present in the grand jury room to ask any specific questions in regard to (a) the intended recipient of the "profit" transmitted to Conran; (b) the consideration for guaranteeing the "profits;" (c) whether there was a deal between the banks and Warren E. Hearnes, or anyone acting for him, in regard to being designated as state depositories; and (d) whether there were any other agreements of this kind, was caused by factors totally unrelated to the answers given to the questions set forth in each of the four counts of the indictment.

We shall now address the legal difficulties with the government's theory of prosecution.

### III.

█ The parties are in complete agreement in regard to any number of conclusions of law. We accept the government's suggested conclusion that:

1. A declaration is "material" within the meaning of 18 U.S.C. Sec. 1623 if it tends to influence, impede or hamper the investigations of a matter which a grand jury is investigating and which the grand jury has authority to investigate. *United States v. Koonce,* 485 F.2d 374 (8th Cir. 1973); *United States v. Edwards,* 433 F.2d 1286, 1294 (8th Cir.), *cert.* denied 404 U.S. 944, 92 S.Ct. 295, 30 L.Ed.2d 259 (1971); *LaRocca v. United States,* 337 F.2d 39, 43 (8th Cir. 1964); *Masinia v. United States,* 296 F.2d 871, 874–75 (8th Cir. 1961); *Brown v. United States,* 245 F.2d 549, 554 (8th Cir. 1957); and *Dolan v. United States,* 218 F.2d 454, 458 (8th Cir.);

*cert.* denied 349 U.S. 923, 75 S.Ct. 665, 99 L.Ed. 1255 (1955).[6]

The government agrees that the following conclusions suggested by the defendant are correct statements of the applicable law:

2. Both falsity and materiality are elements of the offenses proscribed by Title 18, United States Code, Section 1623(a). Consequently, in order to convict the defendant of the offenses charged in each count of the indictment it is incumbent upon the government to prove not only that the defendant, at the time and under circumstances alleged made the alleged statements, but that the statements were both false and material. *United States v. Koonce, supra; Brown v. United States, supra;* and *Masinia v. United States, supra.*

3. While the element of falsity is a question for the trier of fact, the element of materiality is a question of law for the trial court to determine, based upon competent evidence. *United States v. Koonce, supra,* at 380; *Tasby v. United States,* 504 F.2d 332, 337 (8th Cir. 1974); [Government's Suggestions, p. 1].

Defendant has suggested, and the government opposes, the following ultimate conclusions of law in regard to the materiality question presented:

4. The evidence presented by the government was insufficient to establish the materiality of the statements alleged in: (a) Count I of the indictment; (b) Count II of the indictment; (c) Count III of the indictment; and (d) Count IV of the indictment.

5. The government having failed to sustain its burden of proof on the essential element of materiality as to each count of the indictment, the Court is compelled to enter a judgment of acquittal and to find the defendant not guilty of each count of the indictment as a matter of law. *United States v. Koonce, supra.*

We make these conclusions of law as suggested by the defendant for the reasons which we now state.

■ Both parties have agreed that *United States v. Koonce, supra,* states the applicable rules of law. The conviction in *Koonce* was reversed because "the government failed to prove the materiality of the statements in question." *Id.* at 381. *Koonce* concluded that the evidence of materiality the government adduced in that case fell "far short of the '*clear, convincing, and direct evidence*' required by *Brown v. United States,* 245 F.2d 549, 556 (8th Cir. 1957) to sustain a conviction." *Id.* [Emphasis ours] We need not reach the contested question of the appropriate standard of proof, "clear, convincing and direct evidence," or proof beyond reasonable doubt. For we expressly state that we cannot find, even under a preponderance of the evidence standard, that the evidence adduced by the government establishes that, to use the language of *Koonce,* "the statements had the tendency to influence, mislead, or hamper the grand jury's investigation."[7] *Koonce* cited and relied upon *United States v. Freedman,* 445 F.2d 1220, 1227 (2nd Cir. 1971) which involved allegedly

---

6. The defendant's suggested conclusion was in almost identical language. Defendant properly suggested that:

The standard to be applied on the issue of materiality is whether or not the alleged declaration has a natural effect or tendency to influence, impede or hamper the Grand Jury from pursuing its investigation. *United States v. Koonce,* 485 F.2d 374 at 380 (8th Cir. 1973); *United States v. Mancuso,* 485 F.2d 275, 280 (2nd Cir. 1973); *LaRocca v. United States,* 337 F.

2d 39 (8th Cir. 1964); *United States v. Freedman,* 445 F.2d 1220, 1226 (2nd Cir. 1971); Government's Suggestions, p. 2.

7. A failure to meet the preponderance of the evidence standard obviously carries with it our finding and conclusion that the government did not meet either the "clear, convincing, and direct evidence standard" of *Brown,* or the usual criminal standard of proof beyond reasonable doubt.

false testimony before the Securities and Exchange Commission. The SEC investigation concerned whether three particular corporations may have violated federal securities law. Count III of the indictment charged Freedman with perjury for having testified that his only profit-sharing arrangement was with a customer by the name of Gluck. Richard Brown, however, was permitted to testify that he had a profit-sharing arrangement with the defendant in connection with a corporation other than one of the three corporations being investigated by the SEC. The government argued that "Freedman's effort to hide profit-sharing arrangements generally had a tendency to impede the SEC investigation of the three specific corporations." In reversing Freedman's conviction on Count III, the Second Circuit rejected that argument for the following reasons:

> We do not believe, and it is not seriously argued, that every knowingly false statement under oath is perjurious, for such a ruling would eliminate the materiality requirement. The Government's analysis ignores in *Carroll* [*Carroll v. United States,* 16 F.2d 951 (2 Cir.)] what we perceive to be a second essential element in establishing materiality. Implicit in that holding, and in succeeding cases, is the recognition that the "further investigation" of which they speak must have some probative value connected with the scope of the inquiry. That is to say, in order for a knowingly false statement to be material within the purview of § 1621, *it must be shown that a truthful answer would have been of sufficient probative importance to the inquiry so that, as a minimum, further fruitful investigation would have occurred.* Proof of this was absent at trial, and we repeat once again that the materiality of a false statement must be proved to sustain a perjury conviction. [445 F. 2d at 1226–27] [Emphasis ours] (Footnotes omitted)

Examination of the allegedly truthful answers to each of the questions involved in the four counts of the pending indictment establishes that those answers would not, at a minimum, have provided the grand jury with data of sufficient probative importance to have advanced "further fruitful investigation" into the subject matter of the grand jury's inquiry. We expressly find and conclude that the grand jury's investigation into the question of whether payments made by the Mercantile Trust Company to J. V. Conran were taxable income to Warren E. Hearnes in the years 1968 and 1969 would not have been afforded information sufficiently probative to enable it to conduct further fruitful investigation, had the defendant given what the government alleged were the true answers to its questions. We find and conclude that the grand jury simply would not have known anything significant about whether the payments made by the bank to J. V. Conran should be considered as taxable income to Warren E. Hearnes if the defendant had answered the Count I questions by stating that he wrote or dictated the letter. The letter itself says nothing about Warren E. Hearnes or any relationship which may have existed between J. V. Conran and Warren E. Hearnes.

We find and conclude that the grand jury would not have learned anything that it did not already know if the defendant had answered the Count II questions by stating that Mercantile Trust Company had participated in the purchase and repurchase of the bonds and that the defendant was aware of those facts and himself participated in the purchase and sale of the bonds. We find and conclude that had the defendant answered the Count III questions by stating that he was aware of the fact that Mercantile Trust had paid substantially in excess of the market price for the securities, the grand jury's inquiry into whether the payments to J. V. Conran were taxable income to Warren E. Hearnes would not have been advanced

in any respect. And, we find and conclude that if the defendant had answered the Count IV questions by stating that he, acting on behalf of Mercantile Trust Company, had directed and prearranged and had made the decision as to the disposition of bonds, such information would not, standing alone, have afforded a basis for further fruitful investigation by the grand jury. The alleged truthful answer to that question would not, of course, have been responsive to the Count IV question: "And what occasioned your meeting?" But even if that difficulty could be overcome, the defendant's alleged failure to offer the alleged truthful answer to the preliminary question did not in any way tend to influence, impede or hamper government counsel from asking the defendant direct, precise, and material questions in regard to the subject matter of the grand jury's inquiry.

The government basically contends that "*any* question asked the defendant on February 5, the purpose of which was to elicit testimony which would lead to answers to the four general questions . . . was material to the grand jury's inquiry." The last paragraph of the government's suggested conclusions of law states the following, for example, in regard to Count I:

> If, when Mr. Lasater responded, as alleged in Count I, that he didn't "write the letter" his intent was to mislead the grand jury into believing that he had a very limited knowledge of the transaction mentioned in the letter, the grand jury and the investigating attorneys and agents would have been, and in fact were, discouraged from asking more particular questions delving into the identity of

the intended recipient of the "profits" and the consideration flowing to the bank for creating the "profits." Likewise, Mr. Lasater's apparent lack of knowledge would have and in fact did discourage further inquiry as to his knowledge of other similar transactions.

■ We expressly reject the government's theory of prosecution for the reason that under *Bronston v. United States*, 409 U.S. 352, 359, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), the defendant's alleged intention to mislead the jury by his answer is irrelevant to the question of materiality as a matter of law. Furthermore, we cannot find that the defendant's answer to any of the questions involved in any of the four counts of the indictment in fact discouraged specific inquiry into questions which may have been material to the issue of whether the payments made by the bank to J. V. Conran were taxable income to Warren E. Hearnes.

■ *Bowers v. United States*, 92 U.S.App.D.C. 79, 202 F.2d 447 (1973) rejects the notion that a witness may be properly convicted of perjury where the prosecution claims that the answers given to preliminary questions diverted it from asking additional and material questions. The inquiry in *Bowers* involved the activity of organized crime in interstate commerce. The witness was asked and refused to answer questions propounded by the Senate's Special Committee to Investigate Organized Crime. The indictment was brought under 2 U.S.C. § 192, which makes it a crime for a witness to refuse to answer any question "pertinent to the question under inquiry." [8] All of the questions involved

---

8. As illustrated by *Sinclair v. United States*, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692 (1929), the issue of whether a question is "pertinent" to a Congressional inquiry is essentially the same as the issue of whether a question is "material" in a perjury prosecution. The cases involving the different types of prosecutions are cited interchangeably and the same principles are consistently applied to both. *Bowers*, for example, has been cited and applied in a § 1621 perjury prosecution; *United States v. Cross*, 170 F.Supp. 303, 310 (D.D.C.1959); to a § 1001 prosecution for making a false material statement; *Weinstock v. United States*, 97 U.S.App.D.C. 365, 231 F.2d 699, 703 (1956); in a § 1015(a) prosecution for perjury in a naturalization hearing; *United States v. Laut*, 17

in the seven counts of the indictment in *Bowers* were similar to the question in the first count, which asked: "What business did you engage in in Chicago?" *Bowers* first noted that "the pertinency of the question covered by Count I depends, therefore, on whether the answer to that question would aid the subcommittee in ascertaining the extent, if any, to which organized crime operates in interstate commerce and the nature of such operations, if any." [202 F.2d at 449] The court stated the obvious when it said that "an investigation into the activities of organized crime in interstate commerce would [not] be furthered in any way by the subcommittee's knowledge of what business Bowers was engaged in in Chicago some twenty-four years before." Id. The court stated the applicable rule of law as follows:

> While it was the duty of the trial court to determine as a matter of law whether the question was pertinent, that determination could only be made from a factual showing by the government, since the question and the answer for which it called, standing alone, did not pertain to the subject under inquiry. Id.

The government in *Bowers*, in its effort to save the conviction obtained in the trial court, argued on appeal that while the questions involved in each of the seven counts were not, on their face, pertinent to the inquiry, the refusal of the witness to answer those preliminary questions prevented the questioner from following up with questions which would have been pertinent. The court rejected that argument by concluding that:

> The United States had the task of proving his guilt beyond a reasonable doubt, and a part of that task was to show the pertinency of the questions he refused to answer, since pertinency was not apparent from the questions themselves. Some of the seven questions may well have been pertinent, and it might have been possible for the government to show pertinency. *But the important fact is that it did not do so.*

It will not do to say the questions were preliminary in nature and, had they been answered, would have led to and been followed by questions plainly pertinent, for on that theory pertinency need never be shown in a prosecution under the statute. It could always be said the questions were preliminary. The indictment charged the seven questions were themselves pertinent; *the allegation is not sustained by a mere possibility that they might have led to later relevant questions.* [Id. at 452] [emphasis ours]

The conviction in *Bowers* was reversed and the case remanded to the district court with directions to enter a judgment of acquittal for the reason that:

> When a question is not in itself or because of its context plainly pertinent, the United States must somehow show its pertinency to the court; and if it does not do so, the court may not hold the question pertinent as a matter of law.

> In a case like this, the trial judge has no more right to presume pertinency without proof than a jury has to guess at guilt. [Id. at 453]

Application of the principles stated in *Bowers* supports our refusal to accept the government's legal theory that the Assistant United States Attorney was somehow deterred from asking questions which, on their face, could be said to be material to the grand jury inquiry of whether the payments made by the Mercantile Trust Company to J. V. Conran were taxable income to Warren E. Hearnes in the years 1968 and 1969. The principles articulated in *Bowers* also require that we find and conclude that

---

F.R.D. 31, 35 (S.D.N.Y.1955). *Bowers* has also been cited with approval by the Supreme Court. See *Watkins v. United States*, 354

U.S. 178, 208, 77 S.Ct. 1173, 1 L.Ed.2d 1273 (1957) and *Deutch v. United States*, 367 U.S. 456, 469, 81 S.Ct. 1587, 6 L.Ed.2d 963 (1961).

neither the actual questions involved in each of the four counts of the pending indictment nor the answers which could have been given to those questions could be said to provide the grand jury with any material information that would have aided it in ascertaining whether the payments to J. V. Conran were, in fact, taxable income to Warren E. Hearnes.

In conclusion, we feel compelled to state a final reason for our rejection of the government's legal theory. In *Bronston v. United States, supra,* the Supreme Court recognized and applied long-standing principles which define the duty resting upon a prosecutor who seeks to obtain a conviction for perjury. Chief Justice Burger did not state a new rule of law when he concluded that "the burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry." [409 U.S. at 360, 93 S.Ct. at 601] [9] Nor did *Bronston* state a new rule in regard to any answer given by the witness which the questioner may consider to be unresponsive. *Bronston* reasoned that "the very unresponsiveness of the answer should alert counsel to press on for the information he desires" and that "the examiner's awareness of unresponsiveness should lead him to press another question or reframe his initial question with greater precision." [409 U.S. at 362, 93 S.Ct. at 602] Chief Justice Burger concluded the court's unanimous opinion with the following statement which is equally applicable to this case:

Precise questioning is imperative as a predicate for the offense of perjury.

It may well be that petitioner's answers were not guileless but were shrewdly calculated to evade. Never-theless, we are constrained to agree with Judge Lumbard . . . that any special problems arising from the literally true but unresponsive answer are to be remedied through the "questioner's acuity" and not by a federal perjury prosecution. [Id]

IV.

For the reasons stated, it is

Ordered (1) that the government's motion to permit plaintiff to withdraw its consent to submit the issue of materiality to the Court should be and the same is hereby denied. It is further

Ordered (2) that the Clerk should be and he is hereby directed to enter a judgment of acquittal in favor of the defendant in regard to all four counts of the pending indictment.

---

9. See *United States v. Esposito,* 358 F.Supp. 1032, 1033 (N.D.Ill.1973), in which Judge McMillen, in finding the defendant not guilty of § 1623 perjury, cited *Bronston* to support his conclusion that "the questioner had the duty to make the question and answer unambiguously specific if it was to support a charge of perjury." See also *United States v. Razzaia,* 370 F.Supp. 577, 579 (D.Conn. 1973), in which Judge Newman, in granting a motion for acquittal, stated "The Supreme Court has recently noted that in perjury cases, the burden is on the questioner to pin down with precision the details of the inquiry. *Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973)." [Id at 579].