G. Elmer BROWN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 15665.

United States Court of Appeals
Eighth Circuit.

June 28, 1957.

---

Thomas C. Quinlan, Omaha, Neb. (Raymond M. Crossman, Omaha, Neb., on the brief), for appellant.

William C. Spire, U. S. Atty., Omaha, Neb. (J. Frank Cunningham, Attorney, Criminal Division, Department of Justice, Washington, D. C., on the brief), for appellee.

Before GARDNER, Chief Judge, WOODROUGH, Circuit Judge, and DONOVAN, District Judge.

DONOVAN, District Judge.

Appellant was convicted of perjury. He was charged with false swearing by indictment in seven counts, in violation of Title 18, United States Code, § 1621. A plea of not guilty was made to each count. At trial, counts four and five were dismissed by the court. The remaining counts were submitted to the jury. The jury acquitted him on count six and rendered a verdict of guilty on counts one, two, three and seven. Timely motions for a new trial and in arrest of judgment were made and denied by the court. This appeal is from the sentence imposed. We shall refer to the appellant as defendant and the appellee as the government.

Defendant, during the times involved herein, was employed by the government as a Supervisor of Accounts and Collections in the Department of Internal Revenue at Chicago, Illinois. On April 12, 1950, the Commissioner of Internal Revenue, hereafter referred to as the Commissioner, authorized an investigation of the Collector of Internal Revenue at St. Louis, Missouri, hereafter referred to as the Collector. To that end Frank W. Lohn, then Special Agent for Missouri was placed in charge, and Thomas E. Scanlon, then Supervisor of Accounts and Collections for a New England district, Harold B. Holt, a Special Agent from New Orleans, and the defendant, were assigned to work with him. Each had different specific assignments. Defendant was responsible for furnishing personnel to aid Scanlon. They will be referred to jointly as the investigators.

On May 3, 1950, a meeting of the investigators presided over by Lohn was held in St. Louis. Defendant was present. Also present were two additional employees of the government, namely, Rudolph H. Hartmann, then senior Special Agent of the Intelligence Division, and Ernest M. Flinn, then a Special Agent, both of St. Louis, Missouri. At this meeting a conversation was had concerning the investigation (which had been recommended by Honorable George H. Moore, Chief Judge, United States District Court for the Eastern District of Missouri, and ordered by the Commissioner), into alleged official corruption in the office of the Collector. Defendant, an important official in the Internal Revenue Service, had been directed by the Commissioner to assign subordinate employees from his office in numbers to be agreed upon to the work in hand. Defendant expressed his wish to use his men, of whom there were twelve, in an investigation at Springfield, Illinois, and hence he objected to the use of the twelve for the St. Louis project. A heated discussion ensued. It was settled by defendant furnishing three of his men in-

stead of the twelve, and three other men were assigned to him in exchange. Thereafter the investigation of the Collector was carried on by Lohn, Holt and Scanlon under the direction of Lohn, as ordered by the Commissioner. At this meeting, the government witnesses testify, defendant expressed disbelief in the alleged misconduct of the Collector and said he did not believe the charges were true and suggested that they spot check the source of the complaints.

From time to time the investigators met and discussed ways, means and recommendations to carry on and conclude the investigation undertaken by them. The investigation was concluded, and a report dated July 12, 1950, referred to as the Holt-Scanlon Report, was submitted. It recommended certain operational changes in the Collector's Office and advised that there was no evidence that would support charges of misconduct by the Collector. The foregoing was followed by a second investigation, dated February 19, 1951, and termed the Lohn-Hartmann Report.

More than 260 employees of the government were interviewed, and the testimony adduced by the government in this case through the Internal Revenue officers who carried on the investigation was to the effect that the investigation was honest, sincere and intelligent. They agree that defendant had had nothing to do with it except that he had assigned three of his men to assist in it and that he in nowise influenced anyone in the performance of it. Later on, however, other investigations were had in connection with these same matters, and it was charged in the indictment herein that on the 29th day of November, 1954, when defendant testified before the Nebraska grand jury (which was conducting an investigation to determine whether the defendant and others had in conspiracy or otherwise obstructed, or attempted to obstruct, any of said investigations), he testified falsely with respect to certain material matters.

The grand jury of the instant case was drawn in Nebraska on December 14, 1953, and the oath administered to the members thereof on January 18, 1954. It was this grand jury that was sitting as such in Omaha in November, 1954, when defendant was then employed as an administrative assistant in the Regional Commissioner's office in Philadelphia. On November 23, 1954, defendant's superior ordered him to go to Omaha on a special undisclosed assignment, where he was to report to the local revenue office. Upon reporting there he was taken by Special Agent Murphy and Assistant Attorney General Luce to the office of the United States Attorney and then and there interrogated for almost two hours before said grand jury on events occurring some four years previous. The inquisitor directed some 365 questions at defendant in that period of time, and from the responses thereto seven answers in the negative were chosen by the grand jury as the basis for the indictment herein.

The questions put to defendant while on the witness stand before the grand jury and his answers as set forth in the counts of the indictment on which he was convicted (and quoted in the government's brief) are as follows:

"Count 1. Q. All right, sir, but, did you at any time that day or evening [1], or at any time, state in words or substance, that these charges that were made by Moore were preposterous or absurd? A. No, sir.

"Count 2. Q. As I have indicated to you, we are trying to find out whether this thing was blocked, and if so, who did it, so I will ask you this general question: Did you, Mr. Brown, do anything, or say anything, on or prior to May 3rd, 1950, the date being the date when you were in St. Louis on this occasion, intended or calculated to block or thwart, impede or obstruct or prevent this investigation? A. No, sir.

"Count 3. Q. Did you do anything or say anything on the 3rd,

[1]. May 3, 1950.

or prior thereto, to try to influence these men to whitewash Finnegan or to do an inadequate, superficial investigation? A. No, sir.

"Count 7. Q. I previously asked you whether you tried to minimize the charges against Finnegan, or tried to influence them not to do a proper investigation. A. No, sir.

"Q. You say that never happened; is that right? A. I never tried to minimize the investigation; no, sir.

"Q. Or to minimize the charges? A. No, sir.

"Q. Or to influence them not to make a proper investigation. A. No, sir."

The foregoing will suffice as a statement of the instant case. The grounds relied on by defendant for reversal are (1) the grand jury returning the indictment was illegally selected; (2) the grand jury was without jurisdiction for the reason that nothing of substance relating to the subject matter of the inquiry occurred in the district of Nebraska; (3) insufficiency of the evidence.

■ The record makes it clear that the counts in question have to do with answers given by defendant while under oath before a grand jury called, sworn and sitting in the district of Nebraska and that the offenses charged in these counts have to do with matters which occurred in the Eastern District of Missouri. If the grand jury of Nebraska was without authority to inquire into offenses committed in Missouri, then the answers of defendant, even if false, would not amount to perjury.

The court properly found the indictment sufficient in form in that it charged an oath taken by defendant before a tribunal, to wit, the Nebraska grand jury, which it was asserted was inquiring into matters within its competency and that false statements were wilfully made by defendant concerning matters which it was alleged were material to the inquiry.

After entry of defendant's plea of not guilty the Government, on the trial of this case, proved that defendant had appeared before the Nebraska grand jury on the date alleged and had given the testimony set forth in the indictment. The prosecutor then suggested that the jury be excused and that the judge hear the government's witness, Wyllys Newcomb, to show the Nebraska grand jury's jurisdiction of the subject matter that was being presented to it when Brown was a witness before it and the materiality of the questions and answers set forth.

In accordance with that suggestion the jury was temporarily dismissed and Mr. Newcomb was sworn before the judge. His examination covers some fifty typewritten pages. He testified in the absence of the jury that he was a citizen of New York, engaged there in the practice of law and that pursuant to a direction of the Attorney General, he had acted as the government attorney in the conduct of the grand jury proceedings in Omaha, Nebraska, concerning the investigation of the Collector, beginning on or about November 16, 1954. He also related a great number of suspicions which he and the Department of Justice entertained against many persons in connection with the Collector matters, on account of which he had resorted to the Nebraska grand jury proceedings. He said that Mr. Lohn, under whose charge the investigation (beginning in St. Louis, Missouri, on May 3, 1950), had been conducted, was subsequently transferred to Omaha, Nebraska, and was in that city in 1954 and that while he was there he had made some lead pencil notations on a letter concerning the matter of the Collector that he had written, but had never sent. The government investigator had been informed by Lohn about that letter and additions made to it in Omaha in 1954, and Lohn had been called and testified as a witness before the Omaha grand jury prior to the time defendant was called. The letter is not included in the record of the instant case and neither the contents thereof nor the notations that were made on it were shown with any degree of clarity. The action of Lohn in respect to his unsent letter was

the only link Newcomb claimed to have to justify any jurisdiction of the Nebraska grand jury in respect to the investigation of the Collector. Mr. Newcomb also took up each of the counts of the indictment and testified to the suspicions he entertained and the reasons why he thought each of the matters charged was material to the subject matter he claimed was being inquired of by the Nebraska grand jury. No member of the grand jury was called to substantiate in any degree the claims that Mr. Newcomb made as to what the grand jury was inquiring about.

The defendant moved to strike Mr. Newcomb's testimony on the grounds, inter alia, that it did not tend to establish that defendant's testimony was given in any matter within the competency of the Nebraska grand jury nor to establish that the testimony was material to any such matter being inquired of by it. The court reserved ruling until the conclusion of the government's evidence.

The government called Lohn, Holt and Scanlon as witnesses and provided the two witnesses against one required in perjury trials to establish that defendant had made the statements at St. Louis, Missouri, on May 3, 1950, which he denied making before the Omaha grand jury. Other formal proof required for a prima facie case against defendant was made by reading from defendant's testimony before the grand jury as admissions of fact on his part. The government adduced no evidence directed particularly to scienter or motive for any wrongdoing in respect to the Collector's investigation on defendant's part.

Defendant made a motion for acquittal at the close of the government's evidence and contended, inter alia, that the government had not shown that Mr. Newcomb, in taking over the function of the United States Attorney for Nebraska, had presented to the grand jury any matter of Nebraska criminality that was within the competency of the jury to inquire of or any matter material to any inquiry of the grand jury. The court gave consideration to this and observed:

*"I may say that I have scant sympathy with the grand jury investigation which was conducted here in 1954. It came, in my opinion, perilously close to being a fraud on the jurisdiction of this court* * * *
[and] as a matter of common decency the investigation should have been held elsewhere."* [Emphasis supplied.]

The court characterized what Newcomb claimed as "the facet appropriate for investigation which was laid in the Nebraska District" as "almost trivial." The court also said that he was "left in the dark as to what the letter written by Lohn (which was the only claimed link with Nebraska) contained, how significant if at all it was, or whether it had any real and practical connection with the St. Louis Collector's office investigation." But he thought "it could possibly have been articulated into a conspiratorial program of which Lohn was a unit" and "at least on paper" justified the laying of the investigation in Omaha. Defendant's motion (which included numerous other contentions) was denied.

At the conclusion of all the evidence the defendant renewed the motion for a directed verdict. Based on the testimony of Newcomb, given in the absence of the jury, the motion was denied. The court instructed the jury as follows:

"At this point, however, I must inform you that upon the basis of certain records of this court, some of the essential elements of the several counts of the indictment are to be considered by you as established as matters of law. They have to do, in connection with each count, not with the testimony actually given before the Grand Jury by the defendant, or with its truth or falsity, or with whether or not the defendant did or did not believe it to be true, but * * * with the subject matter of the investigation or investigations in which it was engaged.

"Thus, I charge you that the records of this court conclusively show that on or about November 29, 1954,

within the then Omaha division of this court a United States Grand Jury of the United States District Court for the District of Nebraska had been duly empaneled and sworn and was conducting an inquiry and investigation in matters then and there pending before such Grand Jury.

"Furthermore, no question is made upon the record before you or this court, but that on or about November 29, 1954, the defendant appeared as a witness before such Grand Jury.

"There is also before the court undisputed testimony that at such time and place the Grand Jury was conducting an investigation to determine whether there had been violations of the penal statutes of the United States, including the laws relating to bribery, corruption, perjury, the making of false statements, the falsification of documents obstruction of justice, Internal Revenue and Conspiracy. As a matter of law it was material to such investigation to ascertain whether certain officials and employees of the Treasury Department of the United States and the Bureau of Internal Revenue, now known as the Internal Revenue Service, including the defendant, had engaged in and were continuing to engage in a conspiracy to hinder, impede and obstruct investigation into alleged misconduct, corruption and irregularities occurring in the office of the Collector of Internal Revenue, St. Louis, Missouri; and it was further material to ascertain whether certain officials and employees of the Treasury Department of the United States and the Internal Revenue Service, formerly the Bureau of Internal Revenue, including the defendant, had attempted and were continuing to attempt to influence, obstruct, impede or hinder such investigations, or any official or government employee engaged in the performance of his official duties in regard to such investigations.

"Those matters only respecting which I have just advised you that they are either established by the records of this court, or are without factual dispute in the testimony will be regarded by you as true. Upon all of the other essential elements of the several counts of the indictment upon which the case is being submitted to you, you must find where the truth lies."

It is contended for appellant on this appeal (in direct conflict with this peremptory instruction of the court) that the evidence in the case shows that the Nebraska grand jury, functioning solely through Newcomb, caused the defendant to be brought before it, without subpoena or opportunity to seek and take advice, for the purpose of extracting testimony from him, with a view to prosecuting him for perjury and without any purpose of obtaining from him any evidence upon which, in whole or in part, it could find a true bill against anyone for any offense committed in whole or in part in Nebraska, and that such a purpose does not come within the competency of the grand jury; that testimony so obtained was not material within the intendment of Section 1621, United States Code, and could not be made the basis of prosecution thereunder.

■■ We think the defendant's contentions are sound and that the court erred in overruling the motion of the defendant for a directed verdict. The broad investigatory powers of a grand jury, as an arm or agency of the court by which it is appointed, extend (in its efforts to uncover criminal offenses prohibited by federal law) to an inquiry into facts that occurred in another district provided that such inquiry has to do with relevant matters. For instance, if a conspiracy is what the inquiry is directed at, the acts and conduct of the alleged conspirators that may have occurred in a district other than that where the grand jury is sitting may be gone into.

We do not, however, subscribe to the proposition that the Constitution of the United States or the laws enacted thereunder authorize an inquisition into the life and conduct of a defendant with reference to matters that are not relevant or material. No case in point has been furnished the court and none has been found which authorized the roving commission conferred on the grand jury in this case. Whatever power the Attorney General could confer on Newcomb superseding the District Attorney, assuming it was broad, certainly did not extend to the conduct shown by this record. United States District Attorneys are appointed by the President of the United States with the advice and consent of the Senate. We have not encountered any instances in this Circuit where any of them has made such a use of a grand jury as that resorted to here.

On turning to the action of a subcommittee of a Congressional committee considered in United States v. Icardi, D.C., 140 F.Supp. 383, 384, 388, we find the principle that is applicable here exactly stated by Judge Keech. The cited case was a prosecution in the District of Columbia, for perjury before the subcommittee where it was shown that the defendant had been put upon his oath before the subcommittee either "to give him an opportunity to tell his side of the story" or with "the possibility of a perjury indictment as a result of [his] testimony." The opinion (at page 388) reads in part:

> "The court does hold that if the committee is not pursuing a bona fide legislative purpose when it secures the testimony of any witness, it is not acting as a 'competent tribunal'", and that "extracting testimony with a view to a perjury prosecution [is not] a valid legislative purpose. * * * the test of materiality is whether the false testimony was capable of influencing the tribunal on the issue before it."

The court further declared that as the tribunal was not functioning as a competent tribunal, the false answers defendant was charged with having given did not relate to a "material matter."

The court is of the opinion that the evidence in this case clearly established that Mr. Newcomb's purpose was simply to do what he did, viz., to extract from defendant his testimony about the talk in which he had taken part in St. Louis on May 3, 1950, knowing that his recollection of it differed from that of the others present, and to get him indicted for perjury. He knew how each of the parties to that talk, including defendant, remembered it because each had made his sworn statement to investigator Strain, and three of the parties to the talk had already given their recollection of it to the grand jury before Newcomb called defendant. Extracting the testimony from defendant had no tendency to support any possible action of the grand jury within its competency. The purpose to get him indicted for perjury and nothing else is manifest beyond all reasonable doubt.

Another point that should be noted is that the defendant testified on his own behalf that he had never sought to deceive the grand jury and had testified honestly and correctly to the best of his knowledge and belief, and he was not cross-examined on that testimony. There was no evidence that he had any reason or motive to testify otherwise except that in the course of several hundred questions put to defendant it was made clear to him that the special prosecutor, Mr. Newcomb, was trying to implicate him in wrongdoing in connection with the Collector's investigation.

The questions and answers in the indictment are taken out of context in that each of the questions in their context carried that implication of evil purpose on his part. When he made the denials he meant in each instance to deny having such a purpose. He made it plain in other answers that he had no distinct recollection of actual words used in the discussion at St. Louis nearly five years previous, when the only interest he had was to limit the transfer of his men and to keep enough of them to carry on his own work.

■■ To sustain a conviction of perjury it must be shown by clear, convincing and direct evidence to a moral certainty and beyond a reasonable doubt that the defendant committed wilful and corrupt perjury, and the burden is on the government to prove the essential elements of the crime by substantial evidence excluding every other hypothesis than that of defendant's guilt. Probable or credible evidence is not enough. We believe that the defendant's answers relied on by the government to sustain counts one, two, three and seven, taken in conjunction with what has been previously said, makes it obvious that the charge of perjury can only be "sustained by the device of lifting a statement of the accused out of * * * context and thus giving it a meaning wholly different than that which its context clearly shows." Fotie v. United States, 8 Cir., 137 F.2d 831, 842.

The points and authorities submitted by brief and oral argument of able counsel for the government have not been overlooked.

Reversed with direction to dismiss for insufficiency of the evidence.