**UNITED STATES of America**

v.

**Joel KLINE et al.**

**Crim. No. 396–73.**

United States District Court, District of Columbia.

July 27, 1973.

Robert W. Ogren, Asst. U. S. Atty., Washington, D. C., for the U. S.

Stephen H. Sachs, Baltimore, Md., Nathan Lewin, Washington, D. C., for defendant Joel Kline.

David Povich, William E. McDaniels, Washington, D. C., for defendant Eric Adolph Baer.

Paul H. Weinstein, M. Michael Cramer, Washington, D. C., for defendant Donald Harrison Abrams.

## MEMORANDUM AND ORDER RE PRETRIAL MOTIONS

GESELL, District Judge.

This indictment, returned May 9, 1973, names three defendants and is in 21 counts. It charges a conspiracy to obstruct justice, and 20 counts of perjury.

Defendants were apparently business associates and shareholders in companies being lawfully investigated by the Securities and Exchange Commission (SEC) for suspected violations of the 1933 and 1934 Acts. Possible violations of fraud and registration provisions of the Acts were and continue to be under SEC in-

quiry, including alleged misrepresentation and manipulation of certain securities in the over-the-counter markets.

The Court ordered far-reaching discovery for defendants and now, after receiving briefs and hearing argument, various pretrial motions are before it for decision. The motions include demands for bills of particulars and further discovery, severance, motions to suppress certain surveillance tapes on constitutional and other grounds and motions to dismiss various charges. Since the motions to suppress go to the heart of the case, they will be dealt with first.

■ Defendants Kline and Baer confront what the Government claims are crucially incriminating tapes of a private conversation they had at Kline's penthouse office, while the SEC investigation was in progress, with a Government informer equipped with electronic recording and broadcasting devices provided by the Federal Bureau of Investigation (F.B.I.). They contend the tapes and their fruits should be suppressed because their words were seized in violation of their rights under the Fourth, Fifth and Sixth Amendments.

■ It is now conclusively established that the Fourth Amendment is not violated where, during an investigation, a Government agent consents to record his private conversation with others who are suspect without revealing his true identity or purpose. United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); United States v. Jones, 140 U.S.App.D.C. 70, 433 F.2d 1176 (1970), cert. denied, 402 U.S. 950, 91 S.Ct. 1613, 29 L.Ed.2d 120 (1971); 18 U.S.C. § 2511(2)(c) and (2)(d).

This principle, laboriously and somewhat hesitantly fashioned in the give-and-take of many decisions involving covert overhearing, has practical consequences. Informers, in return for Government promises or hope of favors, are equipped with recording devices and sent into the homes and offices of their friends and confidants to trap their words on tape and to turn incriminating evidence over to law enforcement agents. Many individuals, without any knowledge of the Government, secretly tape their own provocative conversations with others for ulterior purposes and use casual remarks to extort or intimidate. This kind of conduct is now routine, as any experienced trial judge knows, and it continues to proliferate without judicial supervision.

The implications of this ill-conceived doctrine are enlarged as skills in fashioning types of electronic overhearing are perfected. Highly accurate and sensitive devices are available. Conversations with the informer can be heard by the Government through walls and even at some distance away, while Government agents and others sit concealed and unobserved. In this instance, the informer was apparently expected to have a lengthy conversation. The equipment carried on the informer's body was not capable of running for the expected duration of the talk. Thus, with his consent, he was also wired to a broadcasting device, and the entire conversation was broadcast to an F.B.I. car in the street outside where it was immediately also recorded and permanently captured for Government use. Electronic gadgetry thus pushes the rationale of the cases to extreme. A Government agent can plant a broadcasting transmitter in a person's home, car or office without Court approval and transmit conversation of a consenting informer so long as the informer's presence is known and accepted by the other occupants, even though they are completely unaware of and indeed affirmatively misled as to the informer's purpose.

This is an enormously dangerous and insidious power to place in the unsupervised hands of the public and the police. There are no restrictions as to time, place or circumstances. Without court supervision, abuses will continue unchecked. We are becoming a society that must exist in constant hazard from official snooping. Whatever incidental

good flows from this invasion of privacy is submerged by the growing appearance of police surveillance so typical of totalitarian states.

Presumably, because the case law is settled in favor of the constitutionality of consensual overhearings such as those involved in this case, defendants urge some of the factors mentioned immediately above and appeal to the Court's supervisory powers. This Circuit has flatly rejected the application of this trial court's supervisory authority in another equally serious consensual overhearing perjury case, noting that the hunter, i. e., the prosecutor, should be permitted to pursue the tactics of the hunted, particularly where the hunted is sophisticated, a circumstance that apparently is deemed relevant in the trial court's attempt to regulate prosecutorial conduct. United States v. Jones, 140 U.S.App.D.C. 70, 433 F.2d 1176 (1970), cert. denied 402 U.S. 950, 91 S.Ct. 1613, 29 L.Ed.2d 120 (1971), rev'g 292 F.Supp. 1001 (D. D.C.1968).

This determination must be accepted as the law governing this case. The suggestion that the law is otherwise, or that another attempt should be made to make it otherwise by use of the Court's supervisory powers, will not be entertained. The consensual overhearing in this case does not violate any provision of the Constitution or any statute. The Court has been denied the power to exercise supervisory powers. Only legislation requiring a warrant in these types of cases can correct the growing intrusions of privacy so central to the Bill of Rights.

■ Defendants press further and contend that the overhearing was accomplished in violation of the Attorney General's own rules and urge that this circumstance alone justifies suppression.[1]

The facts submitted through affidavit by the Government show that the Attorney General issued internal guidelines to the United States Attorneys, the F.B.I., and other agencies, designed to provide some degree of internal governmental supervision over consensual overhearings sponsored by the Federal Government. These guidelines are not public and no citizen, including defendants, can claim reliance on them. The affidavits show the guidelines were followed in spirit, but not precisely, due to exigent circumstances. The F.B.I. was given emergency power to intercept in this instance on the afternoon before the President's inauguration by a representative of the Attorney General in the Attorney General's absence. Documents show that various legal and other safeguarding steps were being taken in consultation with the U. S. Attorney, all as contemplated by the guidelines. The fact that the procedures were not in precise conformity with those anticipated under the guidelines does not give cause to suppress. The guidelines do not have the force or effect of law and while a court might intervene to protect against a blatant abuse by an individual government employee, this was not such a case. Sullivan v. United States, 348 U.S. 170, 75 S.Ct. 182, 99 L.Ed. 210 (1954). *See also* United States v. Hutul, 416 F.2d 607, 626 (7th Cir. 1969); Johnson v. United States, 285 F.2d 700, 702 (9th Cir. 1960).

Defendants' reliance on United States v. Heffner, 420 F.2d 809 (4th Cir. 1969), is misplaced, because guidelines of a different character were involved. In *Heffner,* the Internal Revenue Service publicly announced procedures that required Special Agents to warn taxpayers whom they were questioning that the agent had a duty to investigate tax fraud. Consequently there was a distinct possibility of taxpayer reliance on such a requirement.

■ Defendants go so far as to contend that their lawyers should have been

---

1. It is also suggested that a consensual overhearing of two telephone conversations between defendant Baer and the cooperating informer violated the Attorney General's rules. Baer made an insufficient showing with respect to both precise rules and any violations thereof to present an issue for the Court's determination.

told in advance of the contemplated overhearing and thus enabled to advise their clients of the risks involved in carrying on the taped conversations. This claim is also without any substance. Defendants were not in custody, had not been charged, and the inquiry was still in progress. Moreover, the Government statement that the informer did not initiate the contact nor seek to draw out incriminating statements is unchallenged. Defendants' claim is dispositively rejected by such cases as United States v. Hoffa, 385 U.S. 293, 87 S. Ct. 408, 17 L.Ed.2d 374 (1966), and United States v. Lemonakis, 485 F.2d 941 (D.C.Cir., decided June 29, 1973).

The defendants' motions also challenge the competency of the SEC to take the testimony on which perjury charges are based and the materiality of the inquiries that elicited the allegedly false information.

■ Although the SEC investigation is still under way and a considerable number of companies and securities are involved, defendants seek to have a pretrial hearing to determine whether the questioning of defendants on which perjury counts are based was material and consistent with the proper purposes of the investigation. They suggest that the questions were intended simply to nail down a perjury case, that the SEC already knew of the perjury and that in effect defendants were entrapped before an incompetent tribunal. See Brown v. United States, 245 F.2d 549 (8th Cir. 1957); United States v. Thayer, 214 F. Supp. 929 (D.Colo.1963); United States v. Cross, 170 F.Supp. 303 (D.D.C.1959); United States v. Icardi, 140 F.Supp. 383 (D.D.C.1956). Both the defendants and the Government correctly agree that matters relating to the materiality of the questioning and the competency of the SEC are matters of law for the Court rather than the jury.

■ This does not, however, necessarily require the pretrial evidentiary hearings under Rule 41, Fed.R.Crim.P., which defendants request. As the Government emphasizes, many facts relating to these legal issues must be developed in any event at trial during the Government's case in chief, particularly in view of the indicated entrapment defense, and it would be wasteful to duplicate this effort. After examining the transcript of the SEC hearings, the authorizing orders and taking into account the broad investigatory powers analogous to a grand jury which Congress has given the Commission (United States v. Morton Salt Co., 338 U.S. 632, 642–643, 70 S.Ct. 357, 94 L.Ed. 401 (1950), and S. E. C. v. First Security Bank, 447 F.2d 166, 168 (10th Cir. 1971), cert. denied sub nom. Nemelka v. S. E. C., 404 U.S. 1038, 92 S.Ct. 710, 30 L.Ed.2d 729 (1972)), the Government has made far more than a *prima facie* case of materiality and tribunal competence. Knowledge of the investigating officer that perjury had been committed or was probable did not automatically preclude the officer, in the course of a continuing inquiry pursuant to the agency's acknowledged authority, from providing witnesses, after warning, with opportunity to correct or to explain prior statements.[2] Accordingly, the Court declines in its discretion to hold a pretrial evidentiary hearing and will determine, sometime after the Government's case in chief is completed, whether further facts should be elicited out of the jury's presence on the issue of tribunal competence and materiality.

■ Defendants further urge that the defendants were not adequately warned before questioning and urge the answers cannot therefore provide a basis for perjury counts. Review of the SEC hearing transcripts shows that ample perjury warnings were given.[3] Defendants had knowledgeable counsel at their sides and defendants were not given any

2. See, *e. g.*, Baer SEC Transcript of Feb. 9, 1973, at 28–30, 45 and 61–63.

3. See Baer SEC Transcript of Feb. 9, 1973, at 3, 13, 61–63; Abrams SEC Transcript of

Feb. 1, 1973, at 2–3; Kline SEC Transcripts of Jan. 23 and 30, 1973, at 424, 556–57.

suggestion as to how they should answer. Defendants, after due warning, chose to perpetuate alleged false statements rather than recant in aid of the investigation or invoke the privilege against self-incrimination afforded them by the SEC officers. It is absurd, given the nature of perjury, to suggest that the SEC was required to say to each defendant, "We think your prior answer about so-and-so is false and if you say it again you will be indicted." The claim of lack of adequate warning is frivolous.

Other motions need no discussion. Requests for particulars have been adequately answered. The Government is under continuing obligation to disclose *Brady* material. Elaborate discovery has been afforded. The grand jury transcripts are to remain available but may not be copied without further order of the Court.

Defendant Abrams' motion for severance under Rule 14, Fed.R.Crim.P., does not appear to have any substance, at this stage at least, and is denied without prejudice.

All defense motions are denied.