**Nicholas MARANGELLO, Petitioner,**

v.

**The PEOPLE OF the STATE OF NEW YORK,[1] Respondent.**

**No. 83 Civ. 1256(MEL).**

United States District Court, S.D. New York.

May 16, 1983.

---

1. We note that although the petition incorrectly names the People of the State of New York as respondent rather than the state officer having custody of petitioner, the instant action is cor-

Newman & Adler, New York City, for petitioner; Gustave H. Newman, New York City, of counsel.

Robert M. Morgenthau, Dist. Atty., New York County, New York City, for respondent; Amyjane Rettew, Debora K. Grobman, Asst. Dist. Attys., New York City, of counsel.

LASKER, District Judge.

## I.

### Facts and Prior Proceedings

Nicholas Marangello was convicted of criminal contempt, New York Penal Law § 215.51, based on his responses to questioning before a grand jury conducting an investigation into, *inter alia,* the murder of Carmine Galante in July 1979, and whether there had been a conspiracy to retaliate for Galante's murder. The specific answers upon which Marangello's contempt citation is based concern a conversation among Marangello, Aniello Dellacroce and Steven Cannone which took place outside the Ravenite Social Club on Mulberry Street in New York City approximately two weeks following Galante's murder. As the prosecutor's questioning made clear, the grand jury was attempting to determine whether Galante's murder had been discussed in that conversa-

rectly brought as a petition for writ of habeas corpus because Marangello is currently incar-cerated. See Rule 2(a) of the Rules Governing § 2254 proceedings.

tion, and in particular whether the three had talked about the fact that Galante's murderers had not succeeded in killing Angelo Presenzano along with Galante.

Marangello testified that he had known Galante from 1942 to the time of his murder, and was the godfather of one of Galante's children. Marangello stated that he had known Cannone for thirty years, and that he was acquainted with Dellacroce but had seen him only twice in 1979, both times at the Ravenite Club. Marangello said that he had visited the Ravenite Club three times in 1979, and initially testified that his last visit had been in June, prior to Galante's murder. During that visit, according to Marangello, he watched Cannone playing cards, and he and Cannone then stopped to say good-bye to Dellacroce as they were leaving the club.

When Marangello flatly denied discussing Galante's murder with Cannone and Dellacroce, or indeed with anyone else, the prosecutor played a soundless videotape, recorded on July 26, 1979 outside the Ravenite Club, which showed Marangello engaged in an animated, eleven-minute conversation with Dellacroce and Cannone. After seeing the videotape, Marangello continued to deny that *he* had said anything about Galante's murder or about Presenzano. When asked if Cannone or Dellacroce had said anything about Galante or Presenzano, Marangello said first that he "didn't hear it," (Tr. 51) and then said he didn't "remember it" (Tr. 55). When the prosecutor asked whether Marangello *denied* that such matters were discussed in his presence during the July 26, 1979 conversation, Marangello said

"If I'd say I deny, it, I'm lying. But, I said I didn't hear it. I don't recall it." (Tr. 53).

Based on this testimony Marangello was indicted for criminal contempt[2] and, after waiving a jury trial, was tried before New York Supreme Court Justice Myriam Altman. The state called the prosecutor, Peter Benitez, as a witness, and introduced portions of the grand jury transcript into evidence. The defense called two audiologists, Kevin O'Flaherty and Janie P. Barnett, who testified that Marangello suffers from some hearing loss in both ears. Marangello did not testify.

The trial court, in a written decision, found that the subject on which Marangello was asked to testify was sufficiently unusual and specific to be memorable. Consequently, the court found, Marangello's testimony that he could not remember whether the July 26th conversation concerned Galante's murder was so evasive and ambiguous as to be contemptuous beyond a reasonable doubt. The court noted that it did not find the testimony regarding Marangello's hearing to be significant (A. 271–73). The court sentenced Marangello to a one-year prison term.

The Appellate Division, First Department, unanimously affirmed Marangello's conviction without opinion on December 16, 1982. On January 25, 1983, Marangello was denied leave to appeal to the Court of Appeals.

Marangello raises two issues as grounds for relief in the instant habeas petition. First, he contends that the evidence was insufficient to justify a rational trier of fact finding him guilty of contempt beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Second, he claims that in derogation of his right to due process the grand jury was improperly used to trap him into a contempt citation.

## II.

### Sufficiency of the Evidence

Under New York law, a contempt conviction may be predicated upon a "false and evasive profession of an inability to recall, which amounts to no answer at all . . . ." *People v. Ianniello,* 36 N.Y.2d 137, 142, 365 N.Y.S.2d 821, 824, 325 N.E.2d 146, 151, *cert. denied,* 423 U.S. 831, 96 S.Ct. 52, 46 L.Ed.2d 48 (1975). Viewing the evi-

---

**2.** Marangello was also charged with a second count of criminal contempt stemming from his responses to another line of questioning. He was acquitted on the second count.

dence in the light most favorable to the prosecution, as we must, the evidence was sufficient to permit a rational juror or, in this case, the trial court to find Marangello's testimony contemptuous beyond a reasonable doubt. Marangello stresses that his initial answers unequivocally denied that he had discussed Galante's murder with Cannone and Dellacroce. However, his contempt citation is based upon the answers he gave after viewing the videotape of the July 26th conversation, when he began to insist that *he* did not discuss Galante's murder but that he could not recall whether the others discussed the matter. The prosecutor specifically asked whether Marangello denied that Galante's murder was discussed, and Marangello insisted that he did not deny it but that he could not confirm it either. Under these circumstances the evidence before the court was sufficient to permit a finding that Marangello's testimony was evasive and the equivalent of a refusal to answer.

Marangello argues further that the evidence was insufficient to prove that the matters about which he was questioned were so memorable that his claimed inability to recall them was a pretense. This contention is without merit. The murder of a friend of some 40 years' standing is plainly memorable, and would be so even if the murder were not as notorious as Galante's. Nor can we accept Marangello's argument that, even if the murder itself was memorable, Marangello could not be expected to recall whether it was discussed during the specific conversation that took place on July 26, 1979. Marangello was able to recall more trivial details concerning his encounter with Cannone and Dellacroce at the Ravenite Club: *e.g.*, the fact that he had watched Cannone playing cards that evening. Marangello also recalled that he had seen Dellacroce on precisely two occasions during 1979, both at the Ravenite Club.

Moreover, the conversation in question took place only two weeks after Galante's murder. In light of these circumstances, the evidence is adequate to permit the conclusion that Marangello was capable of either confirming or denying that he discussed Galante's murder and Presenzano's attempted murder during the conversation.

■ Marangello further argues, citing *In re Grand Jury Witness Chanie Weiss,* 703 F.2d 653 (2d Cir.1983), that his petition must be granted because the prosecution presented no extrinsic evidence that the conversation in question did in fact concern Galante's murder. Marangello's reliance on *Weiss* is misplaced for two reasons. First, *Weiss* does not mandate that the prosecution prove the actual content of the conversation; rather, the prosecution must establish only that there is a factual basis supporting the conclusion that the witness cannot credibly deny recalling the matters on which he was questioned. See *Weiss, supra,* 703 F.2d at 668–669. Second, *Weiss* addressed the requirements for imposing a civil contempt sanction under federal law, while the present case concerns only whether the evidence was sufficient, under the standards of *Jackson v. Virginia, supra,* to sustain a criminal contempt conviction under New York law.[3] New York case law clearly establishes that proof of the content of the conversation is not a necessary element of a conviction for evasive contempt. *See People v. Fisher,* 53 N.Y.2d 178, 440 N.Y.S.2d 872, 423 N.E.2d 349 (1981).

### III.

*Entrapment*

Marangello contends that his contempt citation was the product of entrapment, in violation of his right to due process. According to Marangello, the prosecutor, by

---

**3.** Nor does *In the Matter of Frank Kitchen,* —— F.2d ——, No. 83–6083 (2d Cir., April 27, 1983) mandate a different result in this case. *Kitchen,* again, dealt with federal law standards for proving evasive contempt. Moreover, *Kitchen*'s holding that the evidence in that case was insufficient to sustain a contempt conviction was based on a very different set of facts; among other things, the events in question had occurred five years prior to the grand jury investigation, while Marangello was questioned only six months after the conversation with Cannone and Dellacroce took place. In addition, there is no question that Marangello, in contrast to Kitchen, received a procedurally fair hearing on the contempt charges.

showing Marangello the soundless video-tape, deliberately pressured him into qualifying his initial unequivocal denials that he had discussed Galante's murder with Cannone and Dellacroce, and thus maneuvered him into a conviction for evasive contempt. In support of his contention Marangello cites *Brown v. United States,* 245 F.2d 549, 555 (8th Cir.1957), which holds that a grand jury acts beyond its powers when it calls a witness for the sole purpose of eliciting testimony to support a perjury prosecution.

Assuming for the moment that Marangello's contention states a federal-law issue cognizable in a habeas corpus proceeding, the contention nevertheless is unpersuasive because the record does not support his claim that he was called before the grand jury solely for the purpose of a contempt prosecution. The record shows instead that the grand jury was investigating matters surrounding Galante's murder and that it hoped to obtain useful information from Marangello. Nor does the prosecutor's use of the soundless videotape evidence an invidious attempt to entrap Marangello. Rather, the prosecutor's action can with equal force be interpreted as a good-faith effort to jog Marangello's memory in an attempt to elicit useful testimony from him. Moreover, the question of whether a "contempt trap" has been laid for a witness is a question of fact under New York law, one which the trial court, in convicting Marangello of contempt, implicitly found against Marangello. *People v. Fisher, supra,* 440 N.Y.S.2d at 874 n. 1, 423 N.E.2d at 351 n. 1. The evidence was plainly sufficient to permit a rational trier of fact to conclude that no entrapment occurred.

For the foregoing reasons, the petition for a writ of habeas corpus is denied.

It is so ordered.