UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-7435
Summary Calendar
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANKIE B. WILLIAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Mississippi
_____
June 4, 1993
(                    )


Before GARWOOD, JONES and EMILIO M. GARZA, Circuit Judges.

GARWOOD, Circuit Judge:

Appellant, Frankie B. Williams (Williams), was convicted of one count of making false declarations before a grand jury in violation of 18 U.S.C. § 1623. The district court sentenced Williams to a term of imprisonment of twelve months, a three-year term of supervised release, and imposed a $3000 fine and a $50 assessment. Williams now appeals her conviction.

### Facts and Proceedings Below

During 1991, the federal grand jury for the Northern District of Mississippi was engaged in an investigation of a drug conspiracy involving the Rodgerick Williams drug organization (Organization)

based in Greenville, Mississippi. The grand jury heard testimony that the Organization supplied over sixty-five pounds of cocaine to Connie Green (Green) who distributed it in the Lake Village, Arkansas area with the assistance of Williams and her daughter Audrey Williams, who were both residents of Lake Village, Arkansas. Testimony further established that after Green was incarcerated, Williams and her daughter took over the drug distribution operation.

Having been identified as a co-conspirator with knowledge of the Organization, Williams was subpoenaed to appear in Oxford, Mississippi before the federal grand jury. Williams was served with the subpoena on October 3, 1991, and an attachment to the subpoena advised Williams of her rights before the grand jury, including her right to counsel. On October 18, 1991, Williams testified before the grand jury. At the beginning of her testimony, Assistant United States Attorney Charles W. Spillers (Spillers) informed her that she was the subject of an investigation, that she did not have to answer any questions or make any statements if the answer might tend to incriminate her, and that she could be prosecuted for perjury for knowingly making false statements. Williams acknowledged that she understood her rights. Spillers questioned Williams about Al Jackson (Jackson), a major leader in the Organization and one of the principal targets of the investigation. She denied that Jackson had ever given her cocaine or arranged for cocaine to be delivered to her. She also

2

denied that she had ever distributed cocaine.[1]  At the conclusion

---

[1]     The specific parts of her testimony that served as the basis for her indictment were:

> "Q.  Have you ever sold cocaine?
>
> A.   No.
>
> Q.   Have you ever distributed or given anyone any cocaine?
>
> A.   (Witness shakes haed [sic] in the negative.)
>
> Q.   Ma'am?
>
> A.   No.
>
> Q.   Have you ever used cocaine?
>
> A.   No, sir.
>
> . . . .
>
> Q.   When you were living in a mobile home or house did you or anyone else sell cocaine out of that residence on April 21, 1990 at about 6:25 p.m., ma'am?
>
> A.   I didn't.
>
> Q.   Well, did anyone else that you know of?
>
> A.   Well, looking I can't say what went on.  I don't be home all the time.
>
> Q.   I am not asking you what you don't know.  I am asking you whether you know if anybody else did?
>
> A.   No, no, no.
>
> Q.   On June 9, 1990 at about 11:40 p.m., did you or your daughter or anyone else sell cocaine out of your residence in the 400 block of Lee Street?
>
> A.   What for?  I don't be at home that time of night.
>
> Q.   Your answer is no?
>
> A.  No.
>
> . . . .

3

of her testimony, Williams was given an opportunity to avoid prosecution for perjury by amending or correcting her testimony, but she declined to do so.

Prior to Williams's grand jury appearance, she and others had been the targets of an investigation by the Southeast Arkansas Regional Drug Task Force of the Federal Bureau of Investigation, and the Arkansas State Police. On October 2, 1991, an Arkansas bill of information was filed with, and a bench warrant issued by, the Circuit Court of Chicot, Arkansas for the arrest of Williams on four counts of delivery of a controlled substance contrary to Arkansas law. Williams was not arrested or served with the warrant or the information until October 24, 1991.

Williams was indicted on December 12, 1991, for knowingly making a false material declaration in front of a federal grand jury in violation of 18 U.S.C. § 1623. Prior to trial, the district court denied Williams's motions to quash the grand jury

---

Q. On or about September 25, 1990, at about 11:04 p.m., did you or your daughter or anyone else sell cocaine from your residence on Lee Street?

A. No.

Q. Ma'am?

A. No.

Q. Is it your sworn testimony under oath today that neither you nor your daughter sold cocaine on any of the dates I asked you about?

A. Well, I can testify for myself.

Q. That you didn't?

A. I didn't."

indictment and to suppress evidence as being obtained in violation of her Sixth Amendment right to counsel.  The trial was conducted on March 2 and 3, 1992, during which the prosecution presented evidence of the materiality of Williams's statements  through the testimony of, among others, the foreman of the grand jury, Charles Frederick (Frederick), and Spillers.  Frederick testified that the grand jury was investigating the Organization in Greenville, Mississippi, that Williams had been identified as being associated with the Organization, and that the grand jury wanted to determine which members of the Organization were supplying Williams with cocaine.  Frederick further testified that he did not think that Williams's testimonySQwhereby she denied any involvement with cocaineSQinfluenced the grand jury investigation.   Spillers testified that other grand jury witnesses had indicated that Williams had associated with two major figures in the Organization, Danny Williams and Jackson.  Spillers explained that if Williams had admitted selling cocaine, then she could be asked to identify her drug sources and may have been able to serve as another witness in the criminal case against Danny Williams, Jackson, and other members of the Organization.

At trial, the defense during cross-examination elicited testimony from Clarence Cunningham, a prosecution witness, that he had been subpoenaed by the government, had been told that he had to go to court, and that he was scared not to because of threats to his life.  On redirect, the government asked if he knew where the threats came from.  Cunningham responded that he was threatened over the telephone and that he could not identify the voice.  The

defense moved to strike the answer as being hearsay and because Cunningham could not authenticate the telephone conversation. The district court overruled the objection.

Williams was found guilty of the one charge of perjury. Subsequently, the district court denied Williams's motions in arrest of judgment and for judgment of acquittal notwithstanding the verdict of the jury. The district court then sentenced Williams to a term of imprisonment of twelve months, a three-year term of supervised release, and imposed a $3000 fine and a $50 assessment. Williams now appeals her conviction.

**Discussion**

## I. The Grand Jury's Jurisdiction

Williams first argues that her perjury conviction must be reversed because the grand jury exceeded its jurisdictional and investigatory authority by making inquiries into her activities in Arkansas. This argument was raised before this Court by Williams's daughter and was rejected. *United States v. Williams*, No. 92-7524 (5th Cir. March 4, 1993) (unpublished). Williams points out that a false statement made before a grand jury acting beyond its authority is not perjury. *Brown v. United States*, 245 F.2d 549, 554-55 (8th Cir. 1957). However, as noted by the *Williams* panel, in the *Brown* case the appellant was convicted in Nebraska for perjury before the Nebraska grand jury concerning false statements he made regarding activities in Missouri. Under the facts there, the testimony was irrelevant to possible indictment of anyone for an offense committed, in whole or in part, in Nebraska. *Id.* at 554. Here, "[t]he foreman of the grand jury connected Williams's

6

appearance in front of the grand jury to the investigation of the Mississippi-based Rod Williams Organization, and established that the scope of the grand jury's investigation included activities in Mississippi as well as Arkansas." *Williams*, slip op. at 7. A grand jury's investigation into a conspiracy is not limited to the district where the grand jury is located. *See Matter of Grand Jury Proceedings: Marc Rich & Co., A. G. v. United States*, 707 F.2d 663, 667 (2nd Cir.), *cert. denied*, 103 S.Ct. 3555 (1983); *United States v. Antill*, 601 F.2d 1049, 1050-51 (9th Cir. 1979); *United States v. Phillips*, 540 F.2d 319, 328 (8th Cir.), *cert denied*, 97 S.Ct. 530 (1976); *United States v. Girgenti*, 197 F.2d 218, 219 (3rd Cir. 1952). Since the foreman had sufficiently established that the grand jury in its questioning of Williams was investigating a drug conspiracy that took place partially in Mississippi, jurisdiction was proper.

## II.  Materiality

In a similar vein, Williams argues that her grand jury testimony concerning her activities in Arkansas was immaterial to the grand jury's investigation in Mississippi and therefore her perjury conviction must be reversed. To convict for perjury the government must prove that statements made by the defendant were false, material, and not believed by the defendant to be true. *United States v. Abroms*, 947 F.2d 1241, 1245 (5th Cir. 1991). Materiality is a legal issue that is decided by the district court and is reviewed on appeal *de novo*. *Id.* at 1246. The test for materiality is "'whether the false testimony was *capable* of influencing the tribunal on the issue before it.'" *United States*

7

*v. Salinas*, 923 F.2d 339, 341 (5th Cir. 1991) (emphasis in *Salinas*) (quoting *United States v. Giarratano*, 622 F.2d 153, 156 (5th Cir. 1980)). Materiality need not be proved beyond a reasonable doubt. *Abroms*, 947 F.2d at 1246-47.

Williams argues that the false statements were not material to the grand jury investigation because they related only to Arkansas. She offers as proof of this assertion the testimony of grand jury foreman Frederick who stated that he did not think that Williams's false answers influenced the grand jury's investigation.[2] However, he also testified that Williams had been identified to the grand jury as being associated with the Organization and that the questions asked of Williams concerning whether she sold drugs were important because "we wanted to get to the bottom of the drug organization or get to the source of where the drugs were coming from that was being dispensed." Frederick further testified that the grand jury was interested specifically in Williams's testimony as to whom she was receiving the cocaine from; and if she had admitted to sales of cocaine the grand jury would have been interested in her sources.

False statements "need not be material to any particular issue, but may be material to collateral matters that might influence the court or the jury in the decision of the questions before the tribunal." *United States v. Damato*, 554 F.2d 1371, 1373

---

[2]    Williams also points out that the grand jury indictment against her did not state why or how her false statements were material to the investigation. However, this Court is not limited to considering the grand jury's indictment in order to prove the scope of the investigation and thereby the materiality of the witness's statements. *Abroms*, 947 F.2d at 1248.

(5th Cir. 1977).[3]  Here, if Williams had answered truthfully concerning whether she distributed cocaine, then the grand jury would have been able to ask more pertinent questions concerning from whom Williams (who had been identified to the grand jury as associated with the Organization) had received the cocaine; and if someone in the Organization was a source for her cocaine, her knowledge of the Organization itself.  This testimony had the legitimate potential to lead to further evidence concerning the known targets of the investigation and possible other persons that the grand jury was not yet aware of.[4]  In light of the lawfully broad scope of this investigation, Williams's testimony was capable of influencing the grand jury.

---

[3]  It is not determinative that Frederick testified that he did not think the grand jury was influenced by Williams's testimony. As this Court has recognized, "the false statement need not actually affect the tribunal's decision; it need only be capable of affecting the tribunal's decision." *Salinas*, 923 F.2d at 341.

[4]  As noted by the *Williams* panel:

"A transcript of Williams's statements in front of the grand jury and the foreman's testimony that the grand jury's objective was to investigate the Rod Williams Organization is . . . sufficient to demonstrate materiality.  The foreman explained that the grand jury received information indicating that Williams's source was the Rod Williams Organization. In the context of the investigation of the Rod Williams Organization it is clear that truthful answers might have allowed the grand jury to ask more probing questions about Williams's knowledge of the Rod Williams Organization and the source of her drugs. Truthful answers to these questions might have enabled the grand jury to carry out its charge more efficiently, effectively, and extensively." *Williams*, slip op. at 6.

## III. Sixth Amendment Right to Counsel

Williams contends that she was questioned by the grand jury in violation of her Sixth Amendment right to counsel because Spillers did not tell her prior to her grand jury testimony of her right to counsel, nor did he mention the possibility of use immunity for her testimony.[5]  She argues that Spillers was required to make such statements because a prior bill of information charging a violation of Arkansas law had been filed against her, so that her Sixth Amendment right to counsel had attached and her interrogation by the grand jury was in violation of that right.

The right to counsel attaches upon the "initiation of adversary judicial criminal proceedings." *Kirby v. Illinois*, 92 S.Ct. 1877, 1882 (1972); *Daigre v. Maggio*, 705 F.2d 786, 788 (5th Cir. 1983).  This Court has explained that the *Kirby* court viewed the initiation of such proceedings to occur "'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Daigre*, 705 F.2d at 788 (quoting *Kirby*, 92 S.Ct. at 1882).  A bill of information was filed in Arkansas state court on October 2, 1991, accusing Williams of two separate counts of

---

[5]     An attachment to the Subpoena that Williams received stated that "[y]ou may consult with an attorney before testifying; you may have an attorney outside the jury room, and if you desire, you will be afforded a reasonable opportunity to step outside the grand jury room to consult with an attorney before answering any question."  It also informed her that she was "a suspect in [the] investigation," and that "you will be expected to answer all questions asked of you, except to the extent that a truthful answer to a question would tend to incriminate you."  Spillers also informed her at the beginning of her testimony, "you are the subject of an investigation, and that if you . . . are asked any question for which the answer may tend to incriminate you then you need not answer."

delivery of a controlled substance in violation of Arkansas law.[6] The filing of the bill of information in the Arkansas state court certainly triggered her right to counsel in the Arkansas state court proceedings. *Kirby, supra.* However, this filing did not trigger her right to counsel concerning her October 18, 1991 appearance before the federal grand jury in Mississippi.

The initiation of adversary criminal proceedings for an offense causes the Sixth Amendment right to counsel to attach *for that offense*. *United States v. Carpenter*, 963 F.2d 736, 739 (5th Cir. 1992) (noting that "the Sixth Amendment only applies to the specific offense with which the suspect has been charged"). Only under extremely narrow circumstances will the Sixth Amendment right to counsel also attach to other offenses. *Id.* at 740; *United States v. Cooper*, 949 F.2d 737 (5th Cir. 1991), *cert. denied*, 112 S.Ct. 2945 (1992). In *Cooper*, the defendant was arrested and charged for the state offense of robbery, and his car seized as an instrument in the crime. An inventory search of the car's contents revealed a sawed-off shotgun in the trunk. After counsel had been appointed for the defendant in the state case, a federal agent questioned him about both the sawed-off shotgun and the state offense. He was subsequently charged under federal law for unlawful possession of an unregistered weapon, the shotgun. The defendant's statements in the interview with the federal agent

---

[6]    Williams was asked about the underlying facts concerning these two counts during her Mississippi grand jury appearance on October 18, 1991. Her false answers concerning these facts served as a partial basis for her perjury indictment. However, there is no evidence that the grand jury was aware of the prior bill of information filed in Arkansas.

concerning the shotgun, but not the state offense, were used in his federal trial (but not in his state trial).  The defendant argued that all of his statements to the federal agent should have been suppressed because the federal offense was so "inextricably intertwined" with the state offense that his right to counsel for the state charge also attached to the federal offense.  *Id.* at 743. We acknowledged that the Sixth Amendment right to counsel might well attach to a charge that "was extremely closely related to pending . . . charges," at least where the charges concerned "the same" type of crime, "victim, residence, time span, *and sovereign*." *Id.* at 744 (emphasis added).  However, such was not the case in *Cooper*, because "the federal and state crimes concern different conduct, although, efficiently for the governments, both prosecutions could use much of the same evidence."  *Id.*[7]

Here, Williams was also charged with two different offenses: distributing a controlled substance and perjury.  Williams was never charged by the federal authorities for her part in the drug conspiracy, but only for perjuring herself before the grand jury. These charges, brought by different sovereigns and concerning

---

[7]    We also held in *Cooper* that the defendant's Sixth Amendment right to counsel in the federal trial was not violated because "[e]ven assuming the federal agent erred when he questioned Cooper about the state offense, that error is harmless because, as the government points out, it never introduced the statement" concerning the state offense at the federal trial.  *Id.* at 743. The issue here is not whether Williams's grand jury testimony could be used in the Arkansas state case where adversary proceedings had commenced.  And, there is no evidence that federal charges have ever been initiated against Williams for the drug transactions she was questioned about.  Indeed, she made no damaging admissions concerning drug offenses before the grand jury since all of her answers denied culpability.

different conduct, are not "extremely closely related." Williams's Sixth Amendment right to counsel was not violated.

## IV. Hearsay Objection

Finally, Williams argues that the district court erred when it overruled her objection to prosecution-witness Cunningham's testimony that an unidentified voice he heard over the telephone threatened to kill him if he testified. Williams alleges that the testimony was highly prejudicial hearsay and was not authenticated in violation of the "voice identification" rule. In resolving this point of error, we are mindful that our review of a trial court's evidentiary rulings is "highly deferential," and this Court will generally reverse such rulings only for an abuse of discretion. *United States v. Anderson*, 933 F.2d 1261, 1267-68 (5th Cir. 1991).

The complained of testimony was elicited in response to a matter opened up by defense counsel. On cross-examination of Cunningham, Williams's counsel attempted to impeach his credibility by showing that the government had subpoenaed him, and had told him that he had to testify. Cunningham also testified on cross-examination that he was scared because his life was threatened. Cunningham's testimony on cross-examination at least arguably left the impression that the government was the entity that had threatened him.[8] On redirect, the prosecutor elicited testimony

---

[8] Specifically, when asked by defense counsel about the federal official who brought him the subpoena, Cunningham testified:

"Q. What did he tell you about the subpoena?

A. He said I had to come to court.

13

from Cunningham that he had been threatened over the phone and that he could not identify who was making the threats. Cunningham also testified that the person said "I would be killed one way or another, whether they had to burn my mother's house to get me out, one way or another I would be terminated."

Williams claims that Cunningham's statements describing the caller's threats were hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. FED. R. EVID. 801(c). Here, the government was not seeking to prove whether the threats were true, but rather to show why Cunningham feared for his life. *See United States v. Garza*, 754 F.2d 1202, 1206 (5th Cir. 1985) (holding that "[t]he evidence was offered as the fact of an assertion and not as assertion of a fact and was therefore not hearsay"). Since the defense counsel had arguably implied that Cunningham's testimony was unreliable because he had been coerced by the government and was fearful, the government's questioning had at least some relevance as rebutting the defense counsel's implication by showing that Cunningham's state of mind was not the result of government threats.[9] Statements regarding

---

Q. You had to come to court?

A. Come to court because I am scared.

Q. You are scared?

A. Yes.

Q. Why you are scared?

A. Because I have been threatened. My life has been threatened and my family's life has been threatened."

[9] Williams did not object below on the ground that the

14

existing state of mind are exceptions to the hearsay rule. *See* FED. R. EVID. 803(3); *United States v. Taglione*, 546 F.2d 194, 200-01 (5th Cir. 1977) (holding that a defendant's telephone conversation with a third person was admissible under Rule 803(3) to establish the defendant's state of mind concerning alleged threats made by the defendant).

Williams also claims that the statements of the caller should have been excluded because they were not authenticated. Federal Rule of Evidence 901(a) does require that evidence of telephone conversations be authenticated as a condition precedent to their admission. *See* FED. R. EVID. 901(b)(5); *United States v. Scott*, 678 F.2d 606, 611-12 (5th Cir.), *cert. denied*, 103 S.Ct. 304 (1982). The *Scott* court noted that the government had "offered nothing to identify the parties to the overheard [radio] communications." *Id.* at 612. However, "the radio communication evidence came in not to prove the truth of the matter asserted . . . but to explain why the Coast Guard undertook its investigation." *Id.* Similarly, the telephone threats made to Cunningham came in not to prove the truth of the threats (or as any kind of admission) but to explain why the witness was fearful. Therefore we conclude, as did the *Scott* court, that "in view of the strength of the evidence against [Williams] whose conviction we affirm, any error in admitting these

---

evidence should be excluded under FED. R. EVID. 403 because its legitimate probative value was substantially outweighed by the danger of unfair prejudice. Nor has that contention been raised on appeal. The objection below was made solely in terms of hearsay and authentication; there was no mention of prejudice or Rule 403. *See United States v. Martinez*, 962 F.2d 1161, 1168 & n.8 (5th Cir. 1992); *United States v. Vitale*, 596 F.2d 688, 689 (5th Cir. 1979).

rather ambiguous transmissions was harmless."  *Id.*

## Conclusion

Williams has failed to show any reversible error was committed by the district court below.  Accordingly her conviction is

AFFIRMED.