<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 98-1952

                         UNITED STATES,
                           Appellee,

                               v.

                     DAVID PEREZ-MONTAEZ,
                     Defendant, Appellant.

                      ____________________

No. 98-2210

                         UNITED STATES,
                           Appellee,

                               v.

                 JOSE RAUL SANTIAGO-RODRIGUEZ,
                     Defendant, Appellant.

                      ____________________

         APPEALS FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

       [Hon. Juan M. Prez-Gimnez, U.S. District Judge]

                      ____________________

                             Before

                     Lynch, Circuit Judge,

                Campbell, Senior Circuit Judge,

               and O'Toole, Jr., District Judge.

                     _____________________

                                

   Jorge L. Arroyo-Alejandro, by appointment of the Court, for
appellant David Prez-Montaez and Rachel Brill, by appointment of
the Court, for appellant Jos Ral Santiago, were on consolidated
brief.
   Mark Irish, Assistant United States Attorney, with whom
Guillermo Gil, United State Attorney, Jorge E. Vega-Pacheco, Chief,
Criminal Division, and Camille Vlez-Riv, Assistant United States
Attorney, were on brief, for appellee.

                      ____________________

                        February 2, 2000
                      ____________________

        O'TOOLE, District Judge.  David Prez-Montaez (Prez)
and Jos Ral Santiago-Rodrguez (Santiago) were indicted for the
federal crimes of carjacking, 18 U.S.C.  2119, and carrying or
using a firearm during and in relation to a crime of violence, 18
U.S.C.  924(c)(1)(A).  They were convicted on both counts and
received life sentences for the carjacking offense.  They filed
timely notices of appeal.  We have jurisdiction under 28 U.S.C.
1291.
        For the following reasons, we AFFIRM the convictions.
                         I.  Background
        On February 8, 1996, David Vzquez-Rivera (Vzquez) was
found dead at his job site, face down with a bullet wound in his
back.  He had been doing construction work alone at a house in
Caguas, Puerto Rico; his car, a brown Toyota station wagon, was
missing.  Police received tips that the defendants and a third man,
Carmelo Serrano-Bentez (Serrano), had formed a plan to steal
Vzquez's car from him and use it for parts to repair a similar
Toyota station wagon owned by Santiago.   
        Pursuing their investigation, the police went to
Santiago's house.  There was a white Toyota station wagon parked in
the yard next to the residence.  One of the officers, Ulysses
Batalla Ramos (Batalla), later testified that, having obtained
Santiago's consent, the police searched in and around the
automobile and a shed located nearby on Santiago's property.  They
found a number of automobile parts.  Also with Santiago's consent,
they took away the white Toyota station wagon and many of the auto
parts they had found.  Some of the parts were eventually traced to
Vzquez's car.
        Prez, Santiago, and Serrano all were indicted and all
initially pled not guilty.  Serrano later changed his plea,
however, and he testified as a government witness against Prez and
Santiago at trial.  In his testimony, Serrano said that, pursuant
to an agreement with the other men, he drove Prez and Santiago to
the construction site where Vzquez was working, leaving them there
to rob Vzquez of his Toyota, and then proceeded to another part of
Caguas to await their return.  Serrano testified that Prez and
Santiago did indeed return with Vzquez's car and told him that the
robbery had gone badly and that they had killed Vzquez.  Serrano
was cross-examined at length regarding the plea bargain he had
struck with the government that made him a cooperating witness and
also regarding the conflicting versions of events that he had told
at different times.
        The government sought to introduce many of the auto parts
seized from Santiago's residence, but the district court refused to
admit several of those parts in evidence because the government
could not establish the necessary foundation.  The parts that were
admitted, however, included a bumper that had been installed on
Santiago's Toyota.  Vzquez's mother identified the bumper at trial
as one that had come from her son's car.  She was able to recognize
it because of a distinctive mark that had been left by a barbed
wire fence that she had once driven into.  She also recognized her
son's tool kit among the effects seized from Santiago's property.
        After brief deliberations, the jury found Prez and
Santiago guilty of both carjacking and the use of a firearm in
relation to a crime of violence.  On the carjacking convictions,
both defendants were sentenced to life imprisonment, pursuant to
subsection (3) of 18 U.S.C.  2119.
                    II.  Search and Seizure
        Santiago appeals the district court's denial of his
motion to suppress the evidence obtained from the search of his
property.  The district court found that the discovery of the
white Toyota station wagon occurred because it was in plain view
and that the subsequent seizure of auto parts from Santiago's
property had been made with his "total, absolute and complete
consent."  Santiago challenges the latter part of the court's
finding, arguing that no valid consent was given, and even if it
was, the officers seized evidence which exceeded the scope of the
consent.  We  will not disturb the district court's factual
findings unless clearly erroneous and will uphold the court's
denial of the motion to suppress if  "any reasonable view of the
evidence supports it."  United States v. Lanni, 951 F.2d 440, 441
(1st Cir. 1991); see also United States v. Stanley, 915 F.2d 54, 57
(1st Cir. 1990).
        Valid consent renders a warrantless search
constitutionally permissible, and while consent must be voluntary
to be valid, there is no requirement that the person who gave
consent must have been explicitly advised of the right to withhold
it.  See Schneckloth v. Bustamonte, 412 U.S. 218, 234 (1973)
(upholding refusal to suppress fruits of car search despite fact
that consent was obtained without informing car owner of right to
refuse search).  It is the prosecution's burden to establish, by a
preponderance of the evidence, that consent was "freely and
voluntarily given;" there must be more than mere acquiescence in
the face of an unfounded claim of present lawful authority.  
Bumper v. North Carolina, 391 U.S. 543, 548 (1968) (suppressing
fruits of search where consent was  founded on police officer's
false assertion that he had a search warrant).  The district
court's conclusion as to whether consent was freely given must take
into account the totality of circumstances surrounding the
interaction between the defendant and the authorities.  See United
States v. Deutsch, 987 F.2d 878, 883 (2d Cir. 1993).
        We find no error in the district court's conclusion that
Santiago consented to the seizure.  Batalla testified that Santiago
was not threatened, intimidated or coerced, but rather that he
invited the officers onto the property, permitted them to look
around, and agreed to let them take away the white station wagon
and the auto parts.  The testimony was not inherently unbelievable,
and, in the absence of a reason not to do so, we defer to the
district court's first-hand evaluation of Batalla's credibility as
a witness.  The defendants try to make something of Batalla's
testimony that he would have "obtain[ed] other means" to seize the
evidence if Santiago had not consented.  Batalla also testified
that he never communicated such sentiments to Santiago, but even if
he had, an officer's statement that he will "obtain other means" to
seize evidence is not the same as saying that he is presently
entitled, without the "other means," to the evidence.  It is,
therefore, not the sort of pretense to present lawful authority
that Bumper forbids as a foundation for consent.  Nor is there
anything false or unduly coercive about a statement of an intention
to seek other means to obtain access to property.  Indeed, as
Batalla explained, the "other means" he had in mind would have been
a search warrant, which on any fair view of the evidence would have
been amply supported by probable cause.
        Nor did the district court err in concluding that
Santiago gave voluntary consent to the seizure of all the auto
parts taken by the officers.  Although the form Santiago signed
stated that the police could take a "part," singular, not "parts,"
plural, Batalla testified that Santiago orally agreed to the
seizure of all the parts and even went so far as to help the
officers load the parts into a police car.  Again, it is not enough
to overturn the district court's findings simply to argue that
different findings might have been made.  On the totality of
circumstances described in the evidence, the district court could
reasonably have concluded that Santiago voluntarily consented to
the seizure of all the parts taken.
        For these reasons, there was no error in the denial of
the motion to suppress the fruits of the search of Santiago's
property.
                   III.  Evidentiary Rulings
        Prez and Santiago challenge a variety of evidentiary
rulings made by the district court during the course of the trial,
arguing that each of the challenged rulings was error in itself and
that the cumulative effect of the errors was to deny them a fair
trial.  We review the rulings for abuse of discretion before
deciding what cumulative effect any errors may have had.  See
United States v. Cardales, 168 F.3d 548, 557 (1st Cir. 1999).  We
find no abuse of discretion in the several challenged rulings.
        The defendants objected to the admission of statements
allegedly made by Santiago and recounted at trial by government
witnesses.  One witness testified that he heard Santiago make
reference to a "hidden car" shortly after the homicide, and Serrano
testified that Santiago had encouraged him to stonewall the police,
reassuring him that the government's case was weak and that
everything would turn out well.  As against Santiago, neither
statement was hearsay, since both were admissions that meet the
qualifications of Fed. R. Evid. 801(d)(2)(A).  As against Prez,
the statements were admissible as statements of a co-conspirator
under Fed. R. Evid. 801(d)(2)(E).  It was not an abuse of
discretion to admit the statements; neither carried a risk of
unfair prejudice that so substantially outweighed its probative
value that its admission would be unreasonable.  Such statements
are routinely admitted against criminal defendants.  See United
States v. Ros Ruiz, 579 F.2d 670, 676 (1st Cir. 1978).
        Serrano was also allowed to testify about threats that he
received, which he believed to have originated from Santiago.  The
evidence was admitted not to prove the truth of the threats or
their origin but to show Serrano's motivation for having changed
his version of events, which he did several times before trial.  
Indeed, Serrano's credibility was subjected to withering attack
during cross-examination because of his inconsistent accounts.  In
this circumstance, the district court did not abuse its discretion
in allowing the government to put the threats in evidence to try to
explain why Serrano may have changed his story.  See United States
v. Williams, 993 F.2d 451, 457 (5th Cir. 1993).
        Serrano also testified that though he drove Prez and
Santiago to the scene of the crime, he did not expect to receive
any compensation for his role.  On cross-examination, he admitted
that, in fact, he might have expected to receive some compensation.  
At this point, defense counsel sought to impeach him using the
statement of facts adopted by Serrano as part of his plea bargain,
which included the statement that Serrano expected to be paid but
never was.  The district court refused to allow the plea statement
to be used primarily for two reasons: first, because the issue of
Serrano's compensation had "nothing to do with the essential
elements of the offense" to which Serrano pled guilty and thus
Serrano might have paid inadequate attention to that part of the
statement when he adopted it, and second, because Serrano had
already admitted in cross-examination that he might have expected
to be compensated, thus exposing the very inconsistency that the
defense sought to illuminate.
        We are not convinced by the first rationale.  The defense
proffered, but was not allowed to show, that Serrano had adopted
the factual statement in his plea bargain in every respect.  It is
speculative to surmise, as the district court apparently did, that
Serrano may simply have overlooked the part of the statement of
facts in his plea bargain that dealt with compensation.  It would
seem that any statement expressly adopted by the witness concerning
facts that the witness is presently testifying about, whether or
not the statement is part of a plea bargain, would qualify as a
prior statement of the witness available as impeachment material
under Fed. R. Evid. 613.
        Nonetheless, the second rationale provides an adequate
basis to exclude the statement.  The purpose of impeachment is to
raise questions about the veracity of the witness's testimony,
often by pointing out that the witness has given inconsistent
versions of the same set of facts.  The very inconsistency that the
defendants wished to raise was exposed by the difference between
Serrano's direct testimony and his testimony on cross-examination.  
It was not an abuse of discretion for the court to conclude that
the factual recitation in the plea agreement would add little to
what was already before the jury.  Trial judges have wide latitude
under the Sixth Amendment to limit repetitive or marginally
relevant cross-examination.  See United States v. Anderson, 139
F.3d 291, 302 (1st Cir.), cert. denied sub nom. Coutermarsh v.
United States, 119 S. Ct. 158 (1998).
        The defendants also contend that the notes of an FBI
agent memorializing her interview with Serrano and her
understanding of the statements he made during that interview ought
to have been admitted.  The trial court concluded, quite correctly,
that Serrano never adopted those notes as his own statements and
that if they were read to the jury they would constitute
inadmissible hearsay.
        Finally, the defendants argue that the trial court should
not have allowed several auto parts, which were eventually ruled
inadmissible for lack of foundation, to be displayed in the
courtroom where the jury could see them and to be the subject of
some de bene expert testimony.  The district court only allowed the
offending parts to remain in the courtroom as identified exhibits
during the government's attempt to establish their foundation, and
ordered them removed from the courtroom as soon as it was clear
that no foundation would be established.  It is difficult to see
how a foundation for the admission of physical evidence might have
been laid if the witness could not be shown the object.  The
district court also carefully instructed the jury to disregard any
inference they may have drawn from either the sight of them or the
testimony about them.  That was an acceptable way of handling the
matter.
        In sum, all of the evidentiary rulings discussed above
were within the range of appropriate discretion and provide no
basis for reversal.  Since we find no error in the various rulings,
there is no cumulative effect to consider.
                IV.  The Carjacking Convictions
        Prez and Santiago were convicted of carjacking under 18
U.S.C.  2119.  That statute reads in full as follows:
                      Whoever, with the intent to cause death
        or serious bodily harm takes a motor vehicle
        that has been transported, shipped, or
        received in interstate or foreign commerce
        from the person or presence of another by
        force and violence or by intimidation, or
        attempts to do so, shall    

                          (1)  be fined under this title or
          imprisoned not more than 15 years, or
          both,

                          (2)  if serious bodily injury (as
          defined in section 1365 of this title,
          including any conduct that, if the conduct
          occurred in the special maritime and
          territorial jurisdiction of the United
          States, would violate section 2241 or 2242
          of this title) results, be fined under
          this title or imprisoned not more than 25
          years, or both, and

                          (3)  if death results, be fined under
          this title or imprisoned for any number of
          years up to life, or both, or sentenced to
          death.

        The district court apparently considered that the
elements of the offense were set forth in the first, unnumbered
paragraph of the statute and instructed the jury accordingly,
without any objection from the defendants.  After the defendants
were convicted, the court sentenced them each to life imprisonment
in accordance with subsection (3).
        While this appeal was pending, the Supreme Court held
that subsections (1), (2), and (3) of  2119 define "three separate
offenses by the specification of distinct elements, each of which
must be charged by indictment, proven beyond a reasonable doubt,
and submitted to a jury for its verdict."  Jones v. United States,
__ U.S. __ , 119 S. Ct. 1215, 1228 (1999).  The present form of the
statute is different in one respect from the statute considered in
Jones.  In 1994, Congress amended the initial, unnumbered paragraph
of  2119 by deleting the then-existing phrase "possessing a
firearm as defined in section 921 of this title" and substituting
in its place the current phrase "with the intent to cause death or
serious bodily harm."  The amendment thus altered the elements of
the offense, eliminating as an element the possession of a firearm,
and adding an element of specific intent.  The Supreme Court's
construction of the statute in Jones is not affected by this
amendment, so the fact of the amendment does not provide any basis
for distinguishing Jones or concluding that it does not lay down a
rule that must be applied in this case.
        What Jones held, and what is of importance here, is that
subsections (1), (2), and (3) do not simply set forth sentencing
options for the judge, but rather define separate offenses.  A
person may be sentenced under subsection (3) only if he has been
convicted of the offense defined by subsection (3).  And a person
may be convicted of that crime only if the jury has found, beyond
a reasonable doubt,  the existence of the element set forth in
subsection (3) -- that death resulted from the carjacking.   
        Here, the indictment specifically referred to  2119(3)
and adequately set forth the elements necessary to convict Prez
and Santiago of the offense defined by that subsection, but the
court omitted to instruct the jury that they could convict of that
offense only if they found beyond a reasonable doubt that Vzquez's
death resulted from the carjacking.   The government suggests that
the offense defined in  2119(3) was adequately charged since the
jury was instructed on the element of "inten[t] to cause death or
serious bodily harm" contained in the initial, unnumbered
paragraph.  But subsection (3) requires more than proof of intent
to cause death or serious bodily harm; it requires proof that death
actually resulted.  They are different elements.   
        The defendants urge now that the failure of the district
court to instruct on the distinct offense element set forth in
subsection (3) requires that their convictions of that offense be
set aside.  Because the defendants did not raise any objection to
the instruction at trial, our review is for plain error.  See Fed.
R. Crim. P. 30 and 52(b).  For us to find "plain error," there must
be an (1) error, (2) that is plain, and (3) that affects
substantial rights.  See Johnson v. United States, 520 U.S. 461,
467 (1997); United States v. Olano, 507 U.S. 725, 732 (1993).  If
those conditions are met, an appellate court may exercise its
discretion to correct the error provided that a fourth criterion is
also met: the error must have "seriously affect[ed] the fairness,
integrity, or public reputation of judicial proceedings."  Olano,
507 U.S. at 732 (quoting United States v. Atkinson, 297 U.S. 157,
160 (1936)).
        We need not dwell at length on the first two parts of
this four-part inquiry; they are clearly satisfied.  The
interpretation of the carjacking statute announced in Jones applies
to this case, as it must to any case on direct review, see Griffith
v. Kentucky, 479 U.S. 314 (1987), and thus renders the district
court's omission of the subsection (3) element from the jury
instruction an "error."  Furthermore, even though the error was not
"plain" at the time of trial, "it is enough that an error be
'plain' at the time of appellate consideration."  Johnson, 520 U.S.
at 468.  Therefore, we move to the third and fourth parts of the
plain error inquiry.
        An error does not "affect substantial rights" for the
purposes of the third part of the plain error review unless it was
"prejudicial," meaning that it "must have affected the outcome of
the district court proceedings."  United States v. Coln-Muoz, 192
F.3d 210, 222 (1st Cir. 1999) (quoting Olano, 507 U.S. at 734).  
This phase of the inquiry is substantially equivalent to the
analysis for harmless error under Rule 52(a), with the important
distinction that, no objection having been made in the trial court,
it is the defendants' burden to convince us that the error
complained of was prejudicial.  See id.
        The defendants have not come close to making a convincing
showing of prejudice.  Their argument is both perfunctory and
conclusory; they seem to think that it is enough that they point
out the Jones holding and the trial court's omission of an
instruction consistent with that holding.  In other words, they
argue as if satisfying the first two steps of the plain error
analysis is enough.  It is not.  See United States v. West Indies
Transp., Inc., 127 F.3d 299, 306 (3d Cir. 1997) ("Defendants here
have not brought to our attention any facts suggesting that a jury
might have reached a conclusion different from the district court
. . . ."), cert. denied, 522 U.S. 1052 (1998).
        Considering the evidence that was before the jury and the
jury's resolution of other issues presented to them, we have no
difficulty concluding that the trial court's failure to instruct
about the distinct element defined by subsection (3) had no
prejudicial effect on the defendants.  Under Count One of the
indictment, the jury convicted the defendants of taking a motor
vehicle from Vzquez by force and violence with the intent to cause
death or serious bodily injury.  Indeed, the indictment, which was
read to the jury, specifically alleged that the "force and
violence" consisted of "shooting him one time causing his death."  
Under Count Two, the jury convicted the defendants of using or
carrying a firearm during and in relation to a crime of violence.  
Stated less formally, the jury found that when the defendants stole
Vzquez's car from him, they were armed with a gun and they
harbored the specific intent to cause death or serious bodily
injury.  They also had heard uncontroverted evidence that Vzquez
died of a gunshot wound to the back (not to mention Serrano's
testimony that the defendants admitted killing him).  Even if it
were hypothetically possible, it is as a practical matter
inconceivable that this jury would have hesitated to find the
omitted element beyond a reasonable doubt -- that Vzquez's death
resulted from the carjacking.  In convicting the defendants in
accordance with the instructions they received, the jury by
necessity would have found the facts establishing the linkage
between the defendants, the carjacking, and the bullet in Vzquez's
back.  See, e.g., United States v. Hastings, 134 F.3d 235, 244 (4th
Cir.), cert. denied sub nom. Phillips v. United States, 523 U.S.
1143 (1998).
        The fourth condition for finding plain error is not
satisfied either.  The overwhelming evidence that the carjacking
resulted in death, coupled with the verdicts that were rendered,
not only serves to allay any worry that the defendants' substantial
rights were prejudiced but also adequately forestalls a conclusion
that the omission of an instruction on the subsection (3) element
could have seriously affected the fairness, integrity, or public
reputation of judicial proceedings.  Johnson and a host of
subsequent cases have reached precisely the same conclusion under
similar circumstances.  See Johnson, 520 U.S. at 469-70.
        We find no plain error requiring reversal.
                         V.  Conclusion
        For all the foregoing reasons, the judgments of
conviction in each case are affirmed.

</body>

</html>